DAILY EXPRESS, INC., Plaintiff,

v.

NORTHERN NECK TRANSFER CORP.,
Defendant and Third Party Plaintiff,

v.

CAROLINA CASUALTY INSURANCE
COMPANY, Third Party Defendant.

Civ. A. No. 79–369.

United States District Court,
M. D. Pennsylvania.

June 2, 1980.

Harvey Freedenberg, McNees, Wallace & Nurick, Harrisburg, Pa., for plaintiff.

Leon P. Haller, Purcell, Nissley, Krug & Haller, Harrisburg, Pa., for Northern Neck Transfer.

Keefer, Wood, Allen & Rahal, Francis J. O'Gorman, Jr., Harrisburg, Pa., for Carolina Casualty Ins. Co.

### MEMORANDUM

RAMBO, District Judge.

Daily Express, Inc. (Daily) entered into a "trip lease" agreement with Northern Neck Transfer Corporation (Northern) on November 7, 1978. Under the terms of the lease Northern leased a truck and a driver to Daily. While operating the vehicle subject to the terms of the trip lease, Northern's driver-employee became involved in an accident in West Virginia. Daily and Northern have stipulated that the negligence of Northern's driver was the proximate cause of the accident (Stipulation of Facts ¶ 5); that Daily made payments to the injured third parties (SF ¶ 7); and that the payments were fair and reasonable (SF ¶ 8). Daily put Northern on notice, prior to settlement of the claims, that it would look to Northern for reimbursement of the sums paid to settle the claims of the injured third parties.

Daily initiated this action on the basis of the indemnity clause of the "trip lease" agreement[1] *and* common law principles of indemnity. Defendant Northern filed a third party complaint asserting that any liability of Northern to Daily is covered under a contract of insurance between Northern and Carolina Casualty Insurance Company (Carolina). Carolina, on the other hand, alleges that recovery by Northern against Carolina is barred by exclusion (a) of the policy, which excludes from coverage "liability assumed by the insured under any contract or agreement." Presently before the court for determination are motions for summary judgment filed by all parties.[2]

### I. IS DAILY ENTITLED TO INDEMNITY FROM NORTHERN?

The trip on which the accident occurred was being made under authorization of the Interstate Commerce Commission (ICC).

---

1. The indemnification clause contained in the "trip lease" agreement executed by Daily and Northern provides:

   Contractor (Northern) hereby will indemnify and save Carrier (Daily) harmless from any and all costs, expenses, or losses to Carrier caused by Contractor, *his agents,* servants, *employees,* including, but without limitation, *personal injury* and *property damage,* theft, or cargo damage. (emphasis added).

2. Daily filed a motion for summary judgment against Northern, which is not opposed. Northern and Carolina have filed cross-motions for summary judgment.

ICC regulations require that trip leases on vehicles traveling under the authority of the Commission provide for the exclusive possession, control, use of equipment, and the complete *assumption of responsibility* to be with the operating carrier (Daily). 49 C.F.R. § 1057.4(a)(4) (1978). The effect of this ICC regulation was to make Daily liable to the third parties injured in the accident and for the negligence of the truck driver. Daily asserts, however, that though the ICC regulation makes it primarily responsible to the public, it may seek indemnity from the actual tort feasor, the driver, who was an employee of Northern. Daily claims this right under the indemnification clause in the trip lease and under a common law theory of indemnity.

█ The Interstate Commerce Act and the I.C.C. regulations were designed for the protection of the public,[3] not to excuse a party from liability he might otherwise have. *Vance Trucking Co. v. Canal Insurance Co.*, 249 F.Supp. 33, 39 (D.S.C.1966), aff'd., 395 F.2d 391 (4th Cir.), *cert. denied*, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968). "While a lessee cannot free itself of its federally imposed duties when protection of the public is at stake, the federal requirements are not so radically intrusive as to absolve lessors or their insurers of otherwise existing obligations under applicable state tort law doctrines or under contracts allocating financial risk among private parties." *Carolina Casualty Insurance Co. v. Insurance Co. of North America*, 595 F.2d 128, 138 (3rd Cir. 1979) (footnote omitted).

█ The general principle that a court may give effect to otherwise existing allocations of financial responsibility when the goal of protecting the injured public has been fulfilled, appears to find affirmance in *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 96

S.Ct. 229, 46 L.Ed.2d 169 (1975). In that case, the Supreme Court held that pursuant to a hold harmless agreement, "although one party is required by law to . . . bear the consequences of any negligence, the party responsible in law may seek, indemnity from the party responsible in fact." *Id.* at 40, 96 S.Ct. at 235. The case *sub judice* falls within this general principle due to the fact that Daily has already paid the claims of the third parties, members of the general public, and now seeks reimbursement from Northern. Therefore, if Northern has assumed by contract the *ultimate* responsibility for any damage or injury to anyone as a result of its employee's negligence, or if Northern is liable for such damage or injury on the basis of common law indemnification principles, it cannot shirk that responsibility solely on the basis that the I.C.C. regulations place *primary* responsibility *to the public* upon Daily.

█ Whether an individual is entitled to recover on the theory of implied contract of indemnity is determined by the applicable laws of the forum state. *Carolina Casualty Insurance Co. v. Insurance Company of North America, supra.* In this case, Pennsylvania law is controlling.[4]

█ Under Pennsylvania law, before an individual may seek indemnity on either an express or implied contract of indemnity, he must at least have had a legal duty to pay to the third party the sum in question. *West Africa Navigation, Ltd. v. Nacirema Operating Co.*, 191 F.Supp. 131 (D.C.1961). This poses no problem where the indemnitee has paid the sum to satisfy a legally enforcible judgment, but where the payment is made in the settlement of a claim, the question becomes somewhat more complex. The factual situation in this case is

---

**3.** *Baltimore & Pittsburgh Motor Express, Inc. v. Sustrick*, 286 F.Supp. 524, 527 (W.D.Pa.1968).

**4.** Carolina contends that if Northern were liable under an implied contract of indemnity, the applicable state law would be that of West Virginia, based upon the rationale of *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951). The court does not find *McCabe* controlling as the fact situations are clearly distin-

guishable. Furthermore, Pennsylvania subsequently adopted a "significant relationship" test to determine the applicable state law in a conflict of laws situation. *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). The court is satisfied that sufficient interest inures to Pennsylvania such that Pennsylvania law would be applied to the common law indemnity question.

further complicated by the existence of the insurance agreement between Northern and Carolina.

■ Generally, under an express contract of indemnification for damages, an indemnitee is not entitled to recover under the agreement until he has made actual payment or otherwise suffered actual loss or damage. *Borowsky v. Margulis*, 310 Pa. 420, 165 A. 491 (1933). Where, however, the indemnitee's liability is clear, with no apparent defense available, he may discharge a claim against him without waiting for an adjudication of fault. In doing so, however, he assumes the risk in an action against the indemnitor of proving not only that he was liable to the third party, but also that the amount of settlement was reasonable. *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co.*, 207 Pa. Super. 404, 217 A.2d 781 (1966).

■ When dealing with an implied contract of indemnity, the requirements are similar but not exactly the same. If the amount paid is reasonable and just, the payment is made in good faith, and notice is given to the indemnitor that settlement is being made, then the indemnitee may settle; but he still assumes the risk of proving liability and reasonableness of settlement in any subsequent litigation. *Neville Chemical Co. v. Union Carbide Corp.*, 294 F.Supp. 649 (D.C.1968), *affirmed in part, vacated in part*, 422 F.2d 1205, (3rd Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *Martinique Shoes, Inc. v. New York Progressive Wood Heel Co., supra. See also*, 42 C.J.S. *Indemnity* § 25 (1944).

■ The following are undisputed facts. The accident occurred on November 7, 1978. On November 28, 1978, Daily sent Northern a letter stating: (1) the letter was "formal notice of our intent to pursue (the indemnification clause) of the trip lease agreement," (2) Northern, or its insurer could "assume handling of these claims," (3) if Daily were not contacted, it would "proceed to secure the most economical settlement possible and look to (Northern) for indemnity . . . ." Settlement of the claims

was made by Daily after notice to Northern. Further, Northern and Daily have stipulated that the settlement of eleven thousand two hundred dollars ($11,200.00) was paid by Daily, and that such settlement was fair and reasonable.

Daily is justified in seeking payment of the settlement amount from Northern. It is entitled to the indemnity on the basis of the trip lease. But, even absent the lease, Daily would have prevailed on common law principles of indemnity as Northern contests neither the reasonableness of the settlement, nor its ultimate liability. Between Daily and Northern there are no material facts in dispute. Summary judgment will be granted for Daily against Northern.

## II. IS NORTHERN'S LIABILITY TO DAILY A LIABILITY ASSUMED BY CONTRACT OR AGREEMENT?

■ Carolina, who admittedly is the insurer of Northern, alleges that a judgment in favor of Daily and against Northern would result from a liability Northern assumed by contract. This, Carolina states, is a risk it did not assume under the terms of its insurance policy with Northern.[5] The determinative issue is whether Northern's liability to Daily stems from the "contract or agreement."

A compilation of the applicable case law in this area is set forth in 63 ALR 2d 1123 (1959), which states:

> From a perusal of all the cases in point the general principle may be deduced that a provision in a liability policy specifically excluding from coverage liability assumed by the insured under a contract not defined in the policy is operative—in the sense that it relieves the insurer of liability otherwise existing under the policy—only in situations where the insured would not be liable to a third party except for the fact that he assumed liability under an express agreement with such party, but does not relieve the insurer from liability under the policy where the liability of the insured assumed by the

5. The relevant exclusion states as follows: "This insurance does not apply: (a) to liability assumed by the insured under any contract or agreement; . . . ."

insured under an express contract with the third party is coextensive with the insured's liability imposed upon him by law. In other words, where the express contract actually adds nothing to the insured's liability, the contractual liability exclusion clause is not applicable, but where the insured's liability would not exist except for the express contract, the contractual liability clause relieves the insurer of liability. . . .

All the cases are based on the general principle that a contractual exclusion clause contained in an insurance liability policy is not operative in a situation where the insured would have been liable regardless of his contractual promises as an *actively negligent wrongdoer to one* merely passively negligent, or to one *not at all negligent, but by statute or otherwise vicariously liable. Id.* at 1123. (emphasis added).

*See also, Union Paving Company v. Thomas,* 186 F.2d 172 (3rd Cir. 1951); *Merchants Mutual Insurance Co. v. Transformer Service, Inc.,* 112 N.H. 360, 298 A.2d 112 (1972).

Though there was no dispute between Daily and Northern as to who was the legal employer of the truck driver at the time of the accident, Carolina argues that the effect of the ICC regulations discussed above was to make Daily the driver's statutory employer. This assertion has validity when the protection of the public is at issue. As to the employment situation in fact, when the rights of the parties *inter se* are to be determined, their contract is controlling. The trip lease agreement provides in pertinent part:

1. SERVICE AND PAYMENT: Contractor agrees to furnish the complete services of drivers and helpers together with the motor vehicles described herein and all equipment . . .

2. The equipment shall be operated only by Contractor or his employees, it being understood and agreed that Contractor is an independent contractor under this agreement assuming all the normal business risks of an independent contractor and that neither Contractor nor such drivers or other employees as may be employed by him are agents or employees of Carrier.

. . . . .

2b. [C]ontractor may hire such drivers, helpers or other employees as he deems appropriate in the performance of his duties under this agreement and *Carrier shall have no right to direct or control their hiring, their discharge or the manner in which they perform their duties for Contractor,* nor shall Carrier have any responsibility for their compensation, . . . Contractor further understands and agrees that he is fully and solely responsible for the withholding and payment of any and all taxes levied and assessed under any federal and state laws providing for the withholding of taxes on income and for unemployment, old-age pension, social security and any other such tax with respect to any and all persons engaged in the performance of this agreement by and in behalf of the Contractor.

2c. Contractor will pay all expenses of operation under this agreement . . . expenses of drivers, employees and other helpers of Contractor and taxes of any kind assessed against Contractor. . . .

5. FINES: Contractor shall be responsible for payment of any fine, expense or cost incurred by Contractor, his drivers, helpers or any employee of Contractor by reason of Contractor's violation or of failure to adhere to any federal, state or provincial law, municipal ordinance, regulation . . . . (Emphasis supplied.)

The crucial test in determining whether a "loaned employee" actually becomes the employee, for legal purposes, of the party to whom he is loaned or rented, is whether the latter controls the manner in which he will perform his work. It is well established in Pennsylvania that:

Where one is engaged in the business of renting out trucks, automobiles, cranes, or any other machine, and furnishes a driver or operator as part of the hiring, there is a factual presumption that the operator remains in the employ of his original master, and, unless that

presumption is overcome by evidence that the borrowing employer *in fact* assumes control of the employee's *manner of performing the work*, the servant remains in the service of his original employer. (Emphasis in original.) *Mature v. Angelo*, 373 Pa. 593, 97 A.2d 59, 61 (1953). Nothing has been suggested that rebuts this factual presumption. Indeed, the terms of the agreement quoted above lend support to the conclusion that the driver was an employee of Northern at the time of the accident.

The party responsible to the public by law, as is Daily under the ICC regulations, has the common law right to seek reimbursement from the party responsible in fact, here the truck driver. Under the doctrine of respondeat superior, Northern is liable for the negligent acts of its employee driver. Thus, Northern's liability to Daily existed without the express indemnity clause in the lease. The liability existed independent of the contract or agreement even though it was subsequently embodied in the agreement. Therefore, the exclusion clause that Carolina has invoked is not applicable.

Yet it must be remembered that there was no adjudication of the issue of the driver's negligence for the accident which occurred in West Virginia. Thus the question remains whether Carolina should be required to pay for the settlement of a claim made by Daily on Northern's behalf. The negligence of Northern's employee is uncontested between Northern and Daily, but disputed by Carolina. (Third party defendant's answer, ¶ 3.) The record before this court does not reflect whether Carolina was advised of Daily's claim before or after the settlement, or whether Carolina refused to defend, thus bestowing upon Northern the right to make a reasonable settlement in good faith. Since material issues of fact remain, the cross-motions for summary judgment will be denied.