MARYLAND CASUALTY
COMPANY, Plaintiff,

v.

CITY DELIVERY SERVICE, INC.,
Defendant and Third Party
Plaintiff,

v.

AMERICAN CASUALTY CO.
OF READING, Third
Party Defendant.

No. 3:CV–91–1086.

United States District Court,
M.D. Pennsylvania.

Feb. 22, 1993.

Joseph Robert Rydzewski, O'Malley, Harris & Schneider, Scranton, PA, for plaintiff.

Thomas B. Helbig, Scanlon, Howley, Scanlon & Doherty, Scranton, PA, for defendant and third party plaintiff.

James M. Howley, Scranton, PA, for third party defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

In this subrogation action, plaintiff Maryland Casualty Co. (Maryland) seeks indemnification from the defendant, City Delivery Service, Inc. (City Delivery) for claims arising out of a motor vehicle accident which occurred in Lackawanna County, Pennsylvania on March 11, 1988.[1]

---

1. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a) and (c). Although Maryland's insured, E.C. Keller is a Pennsylvania corporation, as is the defendant, City Delivery Service, Inc., Maryland Casualty is a Maryland corpora- tion. As the real party in interest, Maryland's citizenship, not that of its insured, is controlling. See: *Indiana Insurance Co. v. Vlaicevic*, No. 92 C 41, slip op. at 1 (N.D.Ill. Aug. 5, 1992) (WEST-LAW 1992 WL 191125).

A tractor-trailer operated by an employee of Maryland's insured, E.C. Keller, Inc. (Keller), collided with a vehicle operated by Nelson Douaihy.[2] Maryland paid the Douaihys $207,141.75 in an out-of-court settlement.[3]

Maryland filed this action to recover the settlement amount and its legal expenses [4] from City Delivery under an indemnity clause in a lease agreement which City Delivery had with Maryland's insured.[5] City Delivery is an interstate contract carrier licensed by the Interstate Commerce Commission (ICC) to transport goods over authorized routes. Maryland's insured, Keller, is an independent trucking company, which leases trucks and supplies drivers to authorized ICC carriers such as City Delivery. Keller is not an authorized ICC carrier.

City Delivery and Keller entered into a master lease agreement on July 14, 1987.[6] Keller, the lessor, supplied the tractors and drivers. City Delivery, the lessee, supplied the trailers and the loads to be transported. Without City Delivery's ICC authorization, Keller had no right to transport goods in interstate commerce. When transporting goods for City Delivery, Keller displayed on its tractor a placard bearing City Delivery's name. The truck which collided with the Douaihy vehicle was leased to City Delivery, was transporting goods under the City Delivery lease and displayed a City Delivery placard at the time of the accident.

Under its lease agreement with Keller, City Delivery assumed the obligation of providing primary insurance coverage for injuries arising out of the operation of Keller tractors operated by Keller drivers while under lease to City Delivery. In exchange for that promise, Keller paid City Delivery 3% of its gross revenues from lease operations.[7]

City Delivery does not dispute that it had an obligation under the lease to provide coverage for Keller tractors and drivers under lease to it. City Delivery's carrier is American Casualty of Reading, (American), a CNA company.[8] American has consistently denied any obligation to insure Keller tractors under lease to City Delivery as a primary insurer. American refused Maryland's request that it defend the action filed by the Douaihys [9] and fund the settlement.

When Maryland filed this action to recover as Keller's subrogee under the insurance provision clause of Keller's lease agreement, City Delivery joined American as a third party defendant. It alleges that American's failure to defend the action filed by the Douaihys and fund the settlement is a breach of its policy.

This action is before the court on cross motions for summary judgment. All parties have moved for judgment in their favor.[10] Subsequent to the filing of its motion, Maryland filed a supplemental motion for partial summary judgment requesting that the court dispose of liability issues only on summary judgment, because of American's unwillingness to stipulate to the reasonableness of the settlement amount.

All relevant facts necessary to determine liability issues are undisputed. For the rea-

2. A copy of the policy issued by Maryland (Policy No. WTT–82135401) is appended to Record Document No. 23 as exhibit "A".

3. Douaihy and his wife filed a personal injury action against E.C. Keller in the Court of Common Pleas of Lackawanna County, Pennsylvania, Civil No. 88–CV–6641.

4. Maryland alleges that it incurred attorneys' fees of $25,674.75.

5. Neither defendant challenges Maryland's right of subrogation. Its policy with Keller authorizes Keller to transfer its right of recovery to Maryland. (Record Document No. 23, exhibit "A")

6. A copy of the lease agreement is attached to Record Document No. 23 as exhibit "B".

7. Settlement sheets between Keller and City Delivery reflect weekly deductions for insurance premiums.

8. A copy of the policy issued by American (Policy No. ART 5047003) is attached to Record Document No. 23 as exhibit "C".

9. See Record Document No. 23, exhibit "E", a letter from American representative Richard A. Wagner denying coverage.

10. The motions filed by Maryland, City Delivery and American are Record Document Nos. 23, 25 and 28 respectively. Maryland's motion for partial summary judgment is filed to Record Document No. 46.

sons discussed below, we find that 1) City Delivery had a contractual obligation to provide primary liability coverage for Keller drivers and tractors while under lease to it; 2) City Delivery fulfilled that obligation by purchasing coverage from American; 3) primary coverage exists under the American policy; 4) coverage under the Maryland policy for injuries sustained while Keller drivers and tractors were operating under the lease with City Delivery is excess; 5) the settlement and defense costs incurred by Maryland are less than American's policy limits; 6) Maryland's obligation as excess insurer does not come into play; 7) Maryland has a right of recovery against City Delivery, which in turn has a right of recovery against American for all sums recoverable against it.

We dispose of the outstanding motions as follows. Maryland's motion for summary judgment is deemed withdrawn. Maryland's supplemental motion for partial summary judgment against City Delivery on liability issues only will be granted. City Delivery's motion for summary judgment against American will be granted on liability issues only. American's motion for summary judgment will be denied.

## DISCUSSION

### Motion for summary judgment standard

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law*." Fed.R.Civ.P. 56(c) (Emphasis supplied).

... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential ele-

ment of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp., supra* at 323 and 325, 106 S.Ct. at 2552–53 and 2554.

Issues of fact are "genuine" only if a reasonable jury, considering the evidence presented, could find for the non-moving party. *Childers v. Joseph,* 842 F.2d 689, 693–694 (3d Cir.1988), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### Lease agreement

City Delivery does not dispute that it had an obligation under the terms of the lease agreement to provide primary insurance coverage for Keller drivers and tractors while operating under its lease. The lease provides that City Delivery "shall maintain insurance coverage for the protection of the public pursuant to I.C.C. regulations under 49 U.S.C. 10927." In exchange for City Delivery's agreement to provide such coverage, City Delivery retained 3% of the gross revenue due Keller for the lease of its equipment and drivers.[11] Settlement sheets between

---

**11.** Item # 2 of the addendum to the lease agreement spells out the understanding regarding coverage in more detail:

Keller and City Delivery reflect deductions for the premiums as agreed. City Delivery maintains that it fulfilled its obligation by obtaining primary coverage on the leased equipment from American.

The lease also requires Keller, as lessor, to indemnify and hold harmless City Delivery from losses, judgments or other expenses incurred because of injury to third persons sustained as a result of negligence or alleged negligence on the part of Keller its agents, servants or employees. (Complaint, exhibit "A", Part II, para. 5.)

### American coverage

■ American denies coverage on two grounds. It contends that the driver (Greg Keller) was not an insured under its policy and that even if he were, the coverage afforded is excess, not primary coverage, and does not come into play because Maryland is the primary insurer and it defended and settled the Douaihys' claims for less than its policy limits of $750,000.00.

Maryland and City Delivery dispute American's contention that it has no duty to provide coverage. Both contend that its policy affords primary coverage, although each offers a different theory of liability. City Delivery bases its argument on the terms of American's policy; Maryland's theory is premised on obligations imposed by ICC regulations and required motor carrier policy endorsements. We base our decision on the obligations undertaken by American under the terms of its policy.

City Delivery is the named insured under the American policy. Coverage is defined by the policy to include liability insurance on "hired autos"—autos which City Delivery "lease(s), hire(s), rent(s) or borrow(s)." (Record Document No. 23, exhibit "C", Truckers Coverage Form, Section 1–Covered Autos–Symbol 47). By definition, the tractor leased from Keller is a covered "auto". The policy obligates American to pay all sums that City Delivery is legally required to pay as damages for bodily injury or property damages resulting from the use of a covered "auto". (Record Document No. 23, exhibit "C", Liability Coverage of the Truckers Coverage Form, Section II (page 2 of 10).

The applicable policy section defining who qualifies as an insured contains a standard omnibus clause which extends coverage to anyone who, with the permission of City Delivery, uses a covered auto owned, hired, or borrowed by City Delivery. Three conditions apply to this definition: the auto hired, leased or borrowed 1) cannot be a "trailer"; 2) must be used exclusively in City Delivery's business as a "trucker"; and 3) must have been used pursuant to City Delivery's operating rights as a public authority.

All of the conditions necessary for the Keller driver to qualify as an insured have been met. At the time of the accident, City Delivery was leasing the driver's services from Keller. The driver was using a hired auto—a covered auto as defined by the policy—with City Delivery's permission, (Record Document No. 23, exhibit "C", Truckers Coverage Form, page 1 of 10). The auto leased, i.e., Keller's tractor, is not a trailer. At the time of the accident, it was being used exclusively in City Delivery's business as a trucker. The truck displayed a placard bearing City Delivery's name, was operating under City Delivery's lease pursuant to its ICC

Primary Liability Coverage: Authorized Carrier [City Delivery], Lessee will provide Primary Liability Coverage, however a deduction will be made at the rate of 3% of the Gross Revenue to the Truck from Lessors weekly settlement. The rate of the deduction will be subject to change on 5 working days notice. This deduction will be made until the total premium for the vehicle(s) named in this lease has been received by the Lessee. Lessor shall have the right to examine the premium schedule provided to the Lessee by the Insurance Carrier. Lessee shall provide Lessor with a weekly statement containing the following items.

A) Amount of Premium Deduction Made
B) Unpaid Premium Balance
If the Lessor terminates the lease with the lessee the premium will be pro-rated to the date of the lease termination. The unpaid balance of the pro-rated premium will be due in full and deducted from the Lessors final settlement(s). In the event the Lessors final settlement(s) is/are insufficient to satisfy the outstanding premium balance, the Lessor agrees to reimburse Lessee for said outstanding premium balance within 30 days of the lease termination date.
(Complaint, exhibit "A", addendum.)

authorization, and was, under the terms of the lease, under the exclusive possession and control of City Delivery.[12]

■ American argues that an exclusionary clause in section II of the Truckers Coverage Form limits the general provisions defining coverage and operates to preclude coverage of Keller's tractor and driver. The section it cites provides that the following do not qualify as insureds:

Any trucker or his or her agents or employees, other than you [City Delivery] and your employees, ... (2) if the 'trucker' is insured for hired 'autos' under an 'auto' liability insurance form that does not insure on a primary basis the owners of the 'autos' and their agents and employees while the 'autos' are being used exclusively in the 'truckers' business and pursuant to operating rights granted to the 'trucker' by a public authority.'

American argues that because Keller admittedly had primary coverage under the Maryland policy for hired autos, it cannot qualify as an insured under American's policy.

We do not follow the logic of this argument. Applied to the facts of this case, the quoted exclusion provides that Keller, its agents or employees (other than City Delivery employees) are not insured under American's policy if Keller is insured "for hired autos" under a policy "that does *not* insure on a primary basis the owners of the 'autos' and their agents and employees while they are being used exclusively in the Keller's business and pursuant to operating rights granted to Keller by a public authority. (Emphasis added.)

American's argument that Maryland's policy provides primary coverage for Keller, its drivers and its equipment is contrary to the conditions necessary for the exclusion to apply. The quoted exclusion states that truckers lacking primary coverage do not qualify as insureds. Maryland's policy with Keller provides for primary coverage of Keller trac-

tors and drivers while being used exclusively in Keller's business as a trucker. It does not provide such coverage for tractors and drivers while operating under lease to another trucker. In such cases, coverage provided by the Maryland policy is excess, not primary. American's position does not conform to the conditions specified by the "trucker" exception in the American policy. It does not apply and does not operate to preclude coverage.

We have determined that the Keller tractor was an insured vehicle and the Keller driver an insured person under American's policy at the time of the accident. The only American coverage issue remaining is the nature of the coverage provided. Under the terms of American's policy its coverage is primary because the accident occurred while the tractor was under lease to City Delivery and being used exclusively in City Delivery's business as a trucker. Section V—Truckers Conditions of the policy provides in relevant part under the heading "Other Insurance—primary and excess insurance provisions" (page 8 of 10):

a. This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a 'trucker' and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered 'auto' while hired or borrowed from you by another 'trucker.'

. . . .

c. Except as provided in paragraphs a and b above this Coverage From provides primary insurance for any covered 'auto' you own and excess insurance for any covered 'auto' you don't own.

### ICC endorsement

■ Although Maryland argues that the ICC endorsement [13] incorporated in Ameri-

---

12. City Delivery's lease with Keller provides that it will surrender "full control" and "possession" of the leased equipment to City Delivery during the lease term. (Complaint, exhibit "A").

13. The endorsement provides, in relevant part:

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the *Motor Vehicle Carri-*

can's policy and the certificate of insurance [14] which it issued mandates that it provide primary coverage, that argument is not consistent with the law of the Third Circuit as applied to the facts of this case. The endorsement and the certificate guarantee American's availability as a financially responsible party and embody its assurance that it has provided primary coverage to City Delivery in compliance with ICC regulations. See 49 C.F.R. § 1043.2(b)(1).[15]

The purpose of ICC statutory law and regulations is to ensure that a financially responsible party will be available to compensate third persons injured in a collision with an ICC carrier. *American Trucking Associations v. United States*, 344 U.S. 298, 304–05, 73 S.Ct. 307, 311–12, 97 L.Ed. 337 (1953) and *Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 477 (3d Cir.1961). See 49 U.S.C. §§ 10927 and 11107. Regulations control the amount of insurance an ICC carrier is required to maintain, the nature of such coverage, and other specifics. As evidence of such compliance, the ICC carrier obtains a certificate of insurance from its insurer. See 49 C.F.R. § 1043.1(a).

ICC-certified carriers must file an insurance policy or other form of surety with the ICC which is "sufficient to pay ... for each final judgment against the carrier for bodily injury to, or death of, an individual resulting

er Act of 1980 and the rules and regulations of the Federal Highway Administration's Bureau of Motor Carrier Safety (Bureau) and the Interstate Commerce Commission (ICC).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.... It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company....
(Record Document No. 23, exhibit "C", Form MCS-90—"Endorsement for Motor Vehicles Policies of Insurance for Public Liability under Sections 29 and 30 of the Motor Carrier Act of 1980). See 49 U.S.C. § 10927 and 49 C.F.R. § 1003.3 (B.M.C. 90 (Rev.1982).

**14.** The certificate provides, in relevant part:
The receipt of this certificate by the Commission certifies that a policy or policies of ... (of Automobile Bodily Injury, and Property Damage Liability) insurance has been issued by the company identified on the face of this form, that the company is qualified to make this filing under Section 1043.8 or Section 1084.6 of Title 49 of the Code of Federal Regulations, and that by the attachment of endorsement BMC 90, prescribed by the Interstate Commerce Commission, and/or an endorsement prescribed by the U.S. Department of Transportation ... is amended to provide the coverage or security for the protection of the public required under Section 1043.2 of Title 49 of the Code of Federal Regulations. The Amendment covers the operation, maintenance, or use of motor vehicles under certificate of public convenience and necessity or permit issued to the Insured by the Commission or otherwise in transportation, subject to Subchapter II of Chapter 105 of Title 49, United States Code, and the pertinent rules and regulations of the Commission, regardless of whether such motor vehicles are specifically described in the policy or policies or not. The liability of the Company extends to all losses damages, injures or deaths occurring within the authority granted to the Insured by this Commission or elsewhere.
(Record Document No. 23, exhibit "D")

**15.** Section 1043.1 of 49 C.F.R. provides in relevant part:
(a) Public liability. (1) No common or contract carrier subject to subchapter II, chapter 105, subtitle IV of title 49 of the U.S. Code shall engage in interstate ... commerce, and no certificate or permit shall be issued to such a carrier or remain in force unless and until there shall have been filed with and accepted by the Commission surety bonds, certificates of insurance ... or other securities or agreements in the amounts prescribed in § 1043.2, conditioned to pay any final judgment recovered against such motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance or use of motor vehicles in transportation subject to subchapter II, chapter 105, subtitle IV of title 49 of the U.S.Code, or for loss of or damage to property of others ...

from the negligent operation, maintenance, or use of motor vehicles" under the carrier's permit. 49 U.S.C. § 10927(a)(1) and 49 C.F.R. § 1043.1(a). In addition, 49 U.S.C. § 11107(a)(3) requires a "motor carrier ... that uses motor vehicles not owned by it to transport property under an arrangement with another party to ... obtain liability and cargo insurance on [the vehicles]...."

Although some courts have held that an ICC endorsement supersedes any conflicting provision in the policy of which it is a part,[16] the Third Circuit has held that the endorsement and the ICC regulations which require it do not alter the rights and responsibilities of insurance carriers. *Carolina Casualty Ins. Co. v. Insurance Co. of N. Am.*, 595 F.2d 128 (3d Cir.1979). Accord: *Occidental Fire and Casualty Company of North Carolina v. Brocious*, 772 F.2d 47, 52–53 (3d Cir.1985) and *Daily Express, Inc. v. Northern Neck Transfer Corp.*, 490 F.Supp. 1304, 1306–07 (M.D.Pa.1980).

So long as the public interest is protected and third parties have been compensated for their injuries, federal regulations permit lessors, lessees and their insurers to allocate

risk among themselves as they see fit. *Transamerican Freight Lines, Inc. v. Brada Miller Freight Sys's Inc.*, 423 U.S. 28, 34 and 39–40, 96 S.Ct. 229, 232 and 234–35, 46 L.Ed.2d 169 (1975) (indemnification agreement between lessor and lessee held enforceable). In such cases, the ICC endorsement has no further effect on policy interpretation and responsibility among the motor carriers and their various insurers is determined by state insurance and contract law,[17] not by federal requirements. *Carolina Casualty, supra*, 595 F.2d at 140–41.

### Maryland coverage

■ Maryland concedes that its policy provides coverage but contends that under the facts of this case, its coverage is excess, not primary. It points to the "other insurer" clause contained in the Trucker's Endorsement to the policy which provides, in relevant part: "This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered 'auto' while hired or borrowed from you by another 'trucker.'"[18]

The 1973 Kenworth involved in the accident was a covered auto. It is among the

---

**16.** See, e.g., *Empire Fire and Marine Ins. Co. v. Guaranty Nat. Ins. Co.*, 868 F.2d 357, 361–62 (10th Cir.1989) (ICC endorsement negates conflicting limiting clauses in the policy of which it is a part. The policy, as modified by the endorsement, is compared to all other relevant policies in order to determine, under state insurance and contract law, which insurer or insurers are liable.) and *American Gen. Fire & Casualty Co. v. Truck Ins. Exch.*, 660 F.Supp. 557, 569 (D.Kan.1987).

**17.** To the extent reference to state law is required to interpret the policies and the lease at issue, Pennsylvania law plainly governs. Both policies were issued here for vehicles principally garaged in the Commonwealth. Both Keller and City Delivery have principal places of business in Pennsylvania and the lease between them was signed here. Under the significant relationship test of *Griffith v. United Airlines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), Pennsylvania contract and insurance law clearly applies.

**18.** The clause states in its entirety:
This Coverage Form's Liability Coverage is primary for any covered 'auto' while hired or borrowed by you and used exclusively in your business as a 'trucker' and pursuant to operating rights granted to you by a public authority..... [Excerpted sentence.].... while a

covered 'auto' which is a 'trailer' is connected to a power unit, this Coverage Form's Liability Coverage is:
   (1) On the same basis, primary or excess, as for the power unit if the power unit is a covered 'auto.'
   (2) Excess if the power unit is not a covered 'auto.'
b. Any Trailer Interchange Coverage provided by this Coverage Form is primary for any covered 'auto.'
c. Except as provided in paragraphs a and b above, this Coverage Form provides primary insurance for any covered 'auto' you own and excess insurance for any covered 'auto' you don't own.
d. Regardless of the provisions of paragraphs a, b and c above, this Coverage Form's Liability Coverage is primary for any liability assumed under an 'insured contract'.
e. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.
(Maryland policy, Section V—Truckers Conditions, page 8 of 10).

autos listed in the policy schedule of insured vehicles. At the time of the accident, the Kenworth was leased to City Delivery, a trucker under Maryland's policy definition, bringing the clause into effect and making Maryland's coverage excess under the terms of its policy.

Although the cases must be decided on an individual basis, in similar cases the courts of this Circuit have held that a truckman's endorsement in the tractor lessor's liability policy, such as that contained in the Maryland policy, renders that policy's coverage excess for injuries sustained while the tractor was under lease to another trucker. See: *Transport Indemnity Co. v. Home Indemnity Co.*, 535 F.2d 232 (3d Cir.1976) (truckman's endorsement in tractor owner's liability policy interpreted to render coverage afforded by the lessor's policy only excess coverage) and *Preston Trucking Company, Inc. v. Carolina Casualty Insurance Company*, 712 F.Supp. 1208 (W.D.Pa.1989) (truckman's endorsement in tractor owner's liability policy interpreted to provide, at most, excess coverage, for claims arising out of an accident which occurred while the tractor was leased to another trucker whose insurer was found to provide primary coverage).

### Conclusion

To summarize our findings and holding: City Delivery had a contractual obligation under its lease agreement with Keller to provide and maintain primary insurance coverage for Keller drivers and tractors while leased to it and transporting goods under its ICC authority. American's policy affords primary coverage for the harm suffered by the Douaihys. Coverage provided by the Maryland policy is excess only. American's policy limits of $750,000.00 were not reached. Maryland settled all third party claims for $207,141.75 and allegedly incurred legal expenses totalling $25,674.75 in connection with those claims. As the primary carrier, American is required to reimburse Maryland for all sums spent defending and settling the Douaihys claims provided Maryland can establish 1) that American was notified that the claims would be settled and 2) that the amount of the settlement and the amount spent defending the claims are reasonable and just and

that payment was made in good faith. See: *Daily Express, supra*, 490 F.Supp. at 1307–08. A trial will be scheduled to decide those damage issues. Summary judgment will be entered in Maryland's favor and against City Delivery on the liability issue. Summary judgment will be entered in favor of City Delivery and against American on the liability issue.