**FIREMAN'S FUND INSURANCE COMPANY, as subrogee of Donald Miller, et al.**

v.

**EMPIRE FIRE & MARINE INSURANCE COMPANY**

**No. CIV.A. 00–CV–2932.**

United States District Court, E.D. Pennsylvania.

April 19, 2001.

David L. Rhode, Havertown, PA, for Plaintiff.

Donald M. Grimes, Kelly, Grimes, Pietrangelo and Vakil, Media, PA, for Defendant.

### MEMORANDUM

LUDWIG, District Judge.

In this declaratory judgment action, plaintiff Fireman's Fund Insurance Com-

pany, as subrogee of Donald Miller and Buck Run Transport, Inc., moves for summary judgment on the issue of liability. Fed.R.Civ.P. 56.[1]  Jurisdiction is diversity, 28 U.S.C. § 1332, and Pennsylvania law governs substantive issues.

The relevant facts are not in dispute. On November 13, 1992, plaintiff's subrogor, Donald Miller, entered into a lease with Buck Run Transport, Inc. (BRT), an interstate petroleum products hauler licensed by the Interstate Commerce Commission. Cmplt. ex. C. Miller, the lessor, provided the tractor and his services as driver and, under the lease, displayed a placard bearing BRT's name on the tractor. BRT, the lessee, supplied the trailer and load of petroleum to be delivered. At all pertinent times, Miller was the named insured in a policy issued by defendant Empire Fire & Marine Insurance Company (Empire); BRT was the named insured in a policy issued by Fireman's Fund Insurance Company (FFIC); and each policy had a coverage limit of $1,000,000.[2]

On March 17, 1993, Miller was involved in an accident in Chadds Ford, Pa. After he collided with two vehicles that were driven by Alfred Zeccardi and Christopher O'Brien, thousands of gallons[3] of fuel spilled from the trailer.[4]  In September, 1998, FFIC paid Zeccardi $175,000 on behalf of Miller and BRT.[5]  In this lawsuit, FFIC asserts that Empire had a duty to defend and indemnify[6] Miller and BRT

1. "[T]he interpretation of an insurance policy is a question of law for the court." *Bowers v. Feathers*, 448 Pa.Super. 263, 268, 671 A.2d 695, 697 (1995) (quoting *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 441 Pa.Super. 446, 451, 657 A.2d 1252, 1254 (1995)). "Whether a particular loss is within the coverage of an insurance policy is such a question of law and may be decided on a motion for summary judgment in a declaratory judgment action." *Id.* Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The movant must show that there is no triable issue of fact. The nonmovant having the burden of proof at trial must point to affirmative evidence in the record—and not simply rely on allegations or denials in the pleading—in order to defeat a properly supported motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Crissman v. Dover Downs Entertainment, Inc.*, 239 F.3d 357, 360–61 (3d Cir.2001).

2. Miller was insured under Empire's "Commercial Auto–Truckers Policy," number CL0519402, effective between November 10, 1992 and November 10, 1993. Empire concedes that its policy includes coverage for "non-owned trailers," as well as Miller's tractor. Cmplt. ex. A; def. ans. to motion ¶ 6. From July 15, 1992 to July 15, 1993, Buck Run Supply, now named BRT, was covered under FFIC's "Auto Policy" number MZC80286141. Cmplt. ex. B. On December 1, 1992, Empire issued a Certificate of Insurance for BRT.

3. According to the complaint, 7,500 gallons were spilled; plaintiff's motion states 4,000.

4. Empire paid in excess of $60,000 in first-party medical and wage benefits to Miller as a result of the accident, as required by the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701, *et seq.* *See* 75 Pa.C.S.A. § 1713(a)(1) ("a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits against applicable insurance coverage in the following order of priority: (1) for a named insured, the policy on which he is the named insured....").

5. Zeccardi filed suit against O'Brien, Miller and BRT for personal injuries. According to FFIC, after demand, Empire refused to defend or indemnify Miller; FFIC elected to defend BRT under a reservation of rights and retained separate counsel to defend Miller; and FFIC also notified Empire it would pursue reimbursement. Plt. mem. at 3.

6. "Under Pennsylvania law, an insurance company is obligated to defend an insured whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766

and, therefore, owes FFIC the settlement amount, clean-up costs, and legal expenses, totaling $338,449.14.[7]

Although not in so many words, both parties appear to agree that their policies are applicable to the accident. *See Contrans, Inc., v. Ryder Truck Rental, Inc.*, 836 F.2d 163, 165 (3d Cir.1988) ("It is an accepted principle of insurance law that where an accident arises out of the use of a combined vehicle such as a tractor-trailer and where separate policies cover the tractor and the trailer, all insurance applicable to the combined vehicle comes into play, regardless of which part of the rig was physically involved in the accident."); *see also Blue Bird Body Co. v. Ryder Truck Rental, Inc.*, 583 F.2d 717, 726–27 (5th Cir.1978) (when accident arises out of the use of a tractor-trailer, it implicates both regardless of which part of the unit was involved). Here, FFIC contends: (1) contrary to Empire's position,[8] the ICC endorsement in FFIC's policy and Miller's display of BRT's ICC placard on his tractor do not make FFIC primary as a matter of law; and (2) under the "Other Insurance" provisions in the two policies, Empire owes primary coverage, and FFIC's policy is excess.[9] Pltf. mem. at 4–5.

F.2d 754, 760 (3d Cir.1985) (citations omitted). "On the other hand, the duty to defend is a distinct obligation separate from an insurer's duty to indemnify. The duty to indemnify is more limited than an insurer's duty to defend, and arises only when the insured is determined to be liable for damages within the coverage of the policy." *Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579, 584 (E.D.Pa.1999) (quotation and citation omitted).

7. FFIC's calculation:
Claim number, B160A–95735160, lists expenses of $88,325.45 for oil clean-up and $7,712.35 in miscellaneous expense and property damage; attorneys' fees on behalf of BRT, $25,898.37, and on behalf of Miller, $41,512.97; indemnity payments of $87,500 on behalf of BRT and $87,500 on behalf of Miller; $338,449.14 in all.
Pltf. mem. at 4 n. 1.

8. According to FFIC, in refusing to defend and indemnify Miller and BRT in the state court action, Empire relied on *Empire Fire & Marine Ins. Co. v. Guaranty Nat. Ins. Co.*, 868 F.2d 357 (10th Cir.1989). There, it was held that an ICC endorsement negates conflicting limiting clauses in the policy of which it is a part. Therefore, under *Empire*, the policy, as modified by the endorsement, is considered along with other relevant policies in order to determine which insurer or insurers are liable, under state insurance and contract law. *Id.* at 361–62; *see* note 11, *infra*.

9. Although FFIC argues that the transportation lease "is valid, enforceable and operates for the benefit of plaintiff," under which "BRT has a right of indemnification against Donald Miller," it does not offer any substantiation. The lease:

1. Carrier [BRT] hereby engages Contractor [Miller] . . . to transport not less than on gallon in bulk transportation and all such additional freight as may be tendered. The services to be rendered shall be in accordance with the authority held by Carrier from the Interstate Commerce Commission under license number MC 194886. . . .
* * *
5. Contractor shall carry General and Auto Liability with a combined single limit of $1,000,000. Carrier shall carry Cargo Insurance on freight transported by Contractor.
* * *
10. Expenses arising to the Carrier from negligence of the Contractor or his agent(s) resulting in loss and /or contamination of product(s), including any subsequent soil and water contamination, shall be the responsibility of the Contractor until the cleanup is complete.
* * *
13. Contractor and his agent(s) agree to indemnify, defend, and hold Carrier harmless from and against any and all claims, demands, causes of action, damages, suits, costs, losses, or expenses of any kind or character, including attorney's fees, arising out of or in any way connected with any negligence of Contractor or his agent(s).
14. Contractor (lessor) agrees to lease a Peterbilt truck, serial number 291175, to

■ Under a section entitled "endorsements—other automobile coverage," FFIC's policy contains an "endorsement for motor carriers policies of insurance for public liability under sections 29 and 30 of the Motor Carrier Act of 1980 ... MCS 90 01–90. This insurance is primary and the company shall not be liable for amounts in excess of $1,000,000 for each accident." [10] Cmplt. ex. B. Although courts have disagreed as to how an ICC endorsement impacts the allocation of insurance risk,[11] our Court of Appeals has determined that fed-

eral motor carrier requirements do not alter otherwise existing rights and responsibilities of insurance carriers: *Carolina Casualty Ins. Co. v. Insurance Co. of North America*, 595 F.2d 128, 140–41 (3d Cir.1979). In *Carolina Casualty*, an ICC-certified motor carrier leased a truck for which the lessor also provided a driver. While on the lessee's business and displaying the lessee's ICC placards, the truck was involved in a collision causing personal injuries to third parties, who sued the lessee, lessor, and the driver in state court.

Carrier (lessee), and shall maintain at least 50 percent ownership in equipment leased to carrier and perform at least 50 percent of the work.
Cmplt. ex. C.
  In any event, as Empire maintains, because Miller was not found to be negligent, the lease is not controlling on this point. Moreover, FFIC does not explain the materiality of the certificate of insurance to this decision.

10.  The ICC regulations require an "Endorsement for Motor Vehicle Carrier Policies," which "provides that neither other contractual limitations nor violations of the insurance agreement by the insured 'shall relieve the (insurance) company from liability hereunder or from payment of any such final judgment (against the motor carrier-insured), irrespective of the final responsibility or lack thereof ... of the insured.'" *Carolina Casualty Ins. Co. v. Insurance Co. of North America*, 595 F.2d 128, 136 (3d Cir.1979).
  "The purpose of the ICC statutes and regulations is to ensure that a financially responsible party will be available to compensate third persons injured in a collision with an ICC carrier." *Maryland Casualty Co. v. City Delivery Service, Inc.*, 817 F.Supp. 525, 530 (M.D.Pa.1993) (citations omitted). To that end, the regulations require in every lease entered into by an ICC-licensed carrier a clause stating that the carrier retains "exclusive possession, control, and use of the equipment for the duration of the lease" and will "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 376.12. Moreover, all authorized carriers must maintain insurance or other form of surety "conditioned to pay any final judgment recovered against such

motor carrier for bodily injuries to or the death of any person resulting from the negligent operation, maintenance, or use of motor vehicles" under the carrier's license. 49 C.F.R. § 387.301; *see Maryland Casualty*, 817 F.Supp. at 530.

11.  There are three decisional views on how an ICC endorsement affects allocation of risk between insurers:
  (1) the ICC endorsement makes the insurance policy to which it is attached primary as a matter of law over all other insurance policies that lack similar provisions, *see, e.g., Integral Ins. Co. v. Lawrence Fulbright Trucking, Inc.*, 930 F.2d 258 (2d Cir.1991); (2) the ICC endorsement [] negates [only the] limiting provisions in the policy to which it is attached, but does not establish primary liability over other policies that are also primary by their own terms, *see, e.g., Empire Fire*, 868 F.2d at 361–62; ... and (3) the ICC endorsement applies ... [to] claim[s][] being asserted by a shipper or member of the public, and has no application as among insurers. *See, e.g., Occidental Fire & Casualty Co. v. Int'l Ins. Co.*, 804 F.2d 983, 986 (7th Cir.1986); *Carter v. Vangilder*, 803 F.2d 189, 192 (5th Cir.1986); *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1140 (7th Cir.1986); *Grinnell Mut. Reinsurance Co. v. Empire Fire & Marine Ins. Co.*, 722 F.2d 1400 (8th Cir.1983); *Transport Indem. Co. v. Paxton Nat'l Ins. Co.*, 657 F.2d 657 (5th Cir.1981) (Unit A); *Carolina Casualty Ins. Co. v. Ins. Co. of North America*, 595 F.2d 128, 138 (3d Cir. 1979). ...
*Prestige Casualty Co. v. Michigan Mutual Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir.1996).

While the state action was pending, the insurer of the lessor, Carolina Casualty Insurance Company, filed a declaratory judgment action to determine whether the ICC carrier's insurer, the Insurance Company of North America, owed primary coverage. *Id.* at 129–30.

The district court found that under federal motor carrier regulations, "liability for damages to the [injured plaintiffs] is imputed to and imposed by law on [the ICC carrier, lessee]." *Id.* at 132. Our Court of Appeals vacated, holding that responsibility among motor carriers and their insurers must be determined by state law, not by federal requirements. *Id.* at 139–40. The decision reasoned that "where the case is 'concerned with responsibility as between insurance carriers,' and not with the federal policy of protecting the public, 'I.C.C. considerations are not determinative' and a court should consider the express terms of the parties' contracts." *Id.* at 138 (quoting *Allstate Ins. Co. v. Liberty Mut. Ins. Co.*, 368 F.2d 121, 125 (3d Cir.1966)); *see also Occidental Fire and Casualty Co. of North Carolina v. Brocious*, 772 F.2d 47, 52–53 (3d Cir.1985) (federal requirements do not absolve lessors of otherwise existing obligations under contracts allocating financial risk among themselves as private parties); *Maryland Casualty Co. v. City Delivery Serv. Inc.*, 817 F.Supp. 525, 531 (M.D.Pa. 1993) (under *Carolina Casualty*, ICC regulations have no further effect on insurance policy interpretation; so long as the public interest is protected and third parties have been compensated, "responsibility among the motor carriers and their

various insurers is determined by state insurance and contract law, not by federal requirements").

FFIC, therefore, is correct that the ICC endorsement and Miller's display of the placard do not make it primary as a matter of law; if Empire's view is otherwise, it is inconsistent with the law in this Circuit. *See Diamond State Ins. Co. v. Ranger Ins. Co.*, 47 F.Supp.2d 579, 587 (E.D.Pa.1999) (under *Carolina Casualty*, a driver's use of ICC placards does not impose primary coverage as a matter of law); *Twin City Fire Ins. Co. v. Federal Ins. Co.*, Civ.A. No. 92–5834, 1994 WL 719796, at *3 (E.D.Pa. Dec. 23, 1994) (argument that a vehicle displaying a carrier-lessee's placard listing its ICC certificate number made lessee's insurance primary was rejected based in part on *Carolina Casualty* ).

■ Since "application of the relevant I.C.C. regulations does not determine which insurer . . . is responsible for providing primary coverage, the Court must now resort to an analysis of the insurers' individual policies." *Diamond State*, 47 F.Supp.2d at 590. FFIC argues that the "Other Insurance" provisions contained in the policies makes Empire's coverage primary, not excess.[12] Empire's policy:

SECTION V—TRUCKERS CONDITIONS

B. GENERAL CONDITIONS

6. OTHER INSURANCE—PRIMARY AND EXCESS INSURANCE PROVISIONS

   a. This Coverage Form's liability Coverage is primary for any cov-

---

12. " 'Other insurance' exists where there are two or more insurance policies covering the same subject matter, the same interest, and against the same risk." *Nationwide Ins. Co. v. Horace Mann Ins. Co.*, 759 A.2d 9, 11 (Pa.Super.2000) (quotation omitted). There are generally three types of "other insurance" clauses—excess, pro rata, and escape. Ex-

cess clauses provide additional coverage once the policy limits of other policies are exhausted. Pro rata provisions allocate financial responsibility between concurrent policies. An escape clause releases the insurer from all liability to the insured if other coverage is available. *Contrans*, 836 F.2d at 166.

ered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted to you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker." However, while a covered "auto" which is a "trailer" is connected to a power unit, the Coverage Form's Liability Coverage is:

(1) on the same basis, primary or excess, as for the power unit if the power unit is a covered "auto."

(2) excess if the power unit is not a covered "auto."

b. Except as provided in paragraph a. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

\* \* \*

d. When this Coverage Form and any other Coverage Form, policy or self-insurance covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverages Forms, policies or self-insurance covering on the same basis.

Cmplt. ex. A.[13]

The FFIC policy:

## SECTION IV—BUSINESS AUTO CONDITIONS

## B. GENERAL CONDITIONS

## 5. OTHER INSURANCE

A. For any covered auto you own, this coverage form provides primary insurance. For any covered auto you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. However, while a covered auto which is a trailer is connected to another vehicle, the liability coverage [that] this coverage form provides for the trailer is:

(1) excess while it is connected to a motor vehicle you do not own.

(2) primary while it is connected to a covered auto you own.

\* \* \*

C. When this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis.

Cmplt. ex. C.

Under FFIC's policy, inasmuch as the BRT trailer was connected to a vehicle that BRT did not own (Miller's tractor), FFIC's obligation is limited to excess coverage under § IV(B)(5)(A)(1), if anything.[14] *See, e.g., Reliance Ins. Co. v. Federal Ins.*

---

**13.** Empire defines "auto" as "a land motor vehicle, trailer, or semitrailer designed for travel on public roads[.]" "Trucker" means "any person or organization engaged in the business of transporting property by 'auto' for hire."

**14.** Empire does not discuss this aspect of the FFIC policy.

*Co.,* No. Civ.A. 99–CV–5076, 2000 WL 1664008, at *5 (E.D.Pa. Nov. 3, 2000). (in construing identical language, the policy "intended only to provide primary coverage to those of its insureds who owned covered autos"). Under § V(B)(6)(a) of Empire's policy, Miller's tractor was a "covered auto," and, at the time of the accident, it was leased to BRT, a "trucker."[15] It follows that if FFIC's policy encompasses the tractor—*i.e.,* as "other collectible insurance"—"Empire's coverage is also excess; otherwise, Empire's policy is primary under V(B)(6)(b)."[16]

 According to Empire, FFIC's policy is "other collectible insurance" because: The Fireman's Fund policy is specifically endorsed to provide public liability for motor carriers, Form MCS 90 01–90. Such coverage requires that [FFIC] respond to judgments entered as a result of the negligence and/or use of a motor vehicle under its ICC authority. Such coverage is clearly collectible and, in fact, has been paid by Fireman's Fund to a member of the public, Alfred Zecarrdi [sic].

Nevertheless, given its reliance[17] on the ICC endorsement, Empire's contention must be rejected, ala *Carolina Casualty,* 595 F.2d at 138 ("where the case is 'concerned with responsibility as between insurance carriers,' and not with the federal policy of protecting the public, 'I.C.C. considerations are not determinative' and a court should consider the express terms of the parties' contracts") (quoting *Allstate,* 368 F.2d 121, 125 (3d Cir.1966)); *see Diamond State,* 47 F.Supp.2d at 590. On the other hand, without citing caselaw or relevant policy provisions, FFIC maintains that, because it does not insure the tractor—*i.e.,* the "covered auto" contemplated in § V(B)(6)(a) of Empire's policy—its policy is not "other collectible insurance."[18]

"When interpreting a contract of insurance it is necessary to consider the intent of the parties as manifested by the language of the instrument." *Bowers v. Feathers,* 448 Pa.Super. 263, 268, 671 A.2d 695, 697 (1995). Because the parties have not discussed the meaning of "other collectible insurance" in Empire's policy or cited applicable caselaw, no ruling will be made at this time. The parties will be directed to submit further argument on the issue not inconsistent with this opinion.[19]

---

**15.** Because Miller's tractor is a power unit, the trailer is covered by Empire to the same extent as the tractor. *See* note 2, *supra.*

**16.** Also: "[W]hen there is no other applicable insurance to which the excess clause can apply, an excess clause becomes, in effect, primary." *Contrans,* 836 F.2d at 171 (citing *United National Ins. Co. v. Phila. Gas Works,* 221 Pa.Super. 161, 289 A.2d 179, 182 (1972)).

**17.** Empire makes no other argument for the proposition that FFIC's policy is "other collectible insurance."

**18.** "'Other insurance' clauses are deemed mutually repugnant when they are irreconcilable and mutually exclusive; that is, following the express terms of one policy would be in direct conflict with the express dictates of another policy. Where two policies each purport to be excess over the other, such clauses are mutually repugnant; both must be disregarded and the insurers must share in the loss." *Nationwide Ins. Co. v. Horace Mann Ins. Co.,* 759 A.2d 9, 11–12 (Pa.Super.2000) (citations omitted).

**19.** Whether clean-up costs are imposable on Empire should also be discussed.