Charles STERLING, Plaintiff,

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Defendant.**

No. 95–CV–1901.

United States District Court, E.D. Pennsylvania.

May 20, 1996.

Lanier E. Williams, Philadelphia, PA, for Plaintiff.

Nicholas J. Staffieri, SEPTA Legal Division, Philadelphia, PA, for Defendant.

### *MEMORANDUM AND ORDER*

JOYNER, District Judge.

The plaintiff in this case arising under 42 U.S.C. § 1983 is Charles Sterling, a former employee of the Southeastern Pennsylvania Transportation Authority ("SEPTA") who alleges that his Fourteenth Amendment right to due process was abrogated during the course of the termination of his employment. Mr. Sterling and SEPTA have submitted cross-motions for summary judgment, which we resolve today.

### *BACKGROUND*

SEPTA conducts random drug and alcohol testing of selected employees in accordance with the policy set forth in both the 1992–1995 SEPTA/Local 234 Collective Bargaining Agreement and the Integrated Program of Education, Assistance, and Testing for Intoxicants and Control of Substances (the "Integrated Program").[1] Section 15 of the Integrated Program provides that employees who test positive are to be "given an immediate and confidential appointment with the Medical Department" and "shall be removed from operation pending further procedures." The employee is entitled to review the report and request that the sample be re-tested. If the re-test also yields a positive result, the employee must either submit to drug treatment, resign, or face discharge. Once the employee completes the drug treatment program and returns to active duty, he is subject to unannounced drug testing for a period of one year. In the event a follow-up test yields a positive result, the employee may seek to review the report and contest the result. If the employee fails to seek review

---

**1.** This Court has upheld the constitutionality of SEPTA's drug testing policy. *See Transport Workers' Union, Local 234 v. SEPTA,* 678 F.Supp. 543 (E.D.Pa.), *aff'd,* 863 F.2d 1110 (3d Cir.1988), *vacated and remanded,* 492 U.S. 902, 109 S.Ct. 3208, 106 L.Ed.2d 560 *aff'd in relevant part,* 884 F.2d 709 (3d Cir.1989).

or fails to contest the result successfully, he is then discharged.

SEPTA hired Mr. Sterling in 1972 and employed him as a bus operator during the time period relevant to this lawsuit. On October 1, 1993, Mr. Sterling was selected for a random drug test and tested positive for cocaine. Pursuant to his rights under the Integrated Program, Mr. Sterling elected to enter a drug treatment program and submit to periodic, unannounced drug tests. Mr. Sterling acknowledged that a positive result on any subsequent drug test would be grounds for discharge. On July 7, 1994, Mr. Sterling was administered an unannounced drug test. SEPTA's medical department learned on July 13 that the test result revealed traces of cocaine in Mr. Sterling's system. The medical department then telephoned Mr. Sterling's supervisor, Michael D. Kelly, and informed him that due to medical considerations, Mr. Sterling was to be taken off his bus route immediately. Mr. Kelly met personally with Mr. Sterling later that day to inform him that he had been placed on sick leave and to instruct him to report to the medical department on the following morning. On July 14, Mr. Sterling met with Richard A. Press, M.D., SEPTA's medical director, who notified him that he had tested positive for cocaine and that he would not be permitted to return to work. Pursuant to his rights under the Integrated Program, Mr. Sterling requested a re-test of the urine specimen, the result of which was also positive.

Mr. Kelly arranged to meet with Mr. Sterling and his union representative on July 26. At the request of Mr. Sterling's union representative, however, Mr. Kelly agreed to continue the hearing until August 1. On that day, Mr. Kelly informed Mr. Sterling and his representative that the re-test result was positive. Mr. Sterling was presented with documentation supporting the conclusion that he had used cocaine and was notified that his employment would be terminated. In his affidavit, Mr. Sterling states that "[p]rior to telling me these things, Mr. Kelly did not afford me an opportunity to be heard with respect to whether I should be discharged from employment." Sterling Aff. ¶ 5.

The second-level grievance hearing was scheduled for August 10. Prior to the hearing, Mr. Sterling's union representative advised him that he stood little chance of success in light of the evidence, and that he could preserve his pension and maintain a clean employment record by offering his resignation. Accordingly, Mr. Sterling submitted his resignation on August 10. The second-level grievance hearing was thereby aborted; and SEPTA rescinded the discharge and made the resignation retroactive to August 1, the date on which Mr. Kelly notified Mr. Sterling of the termination of his employment. Mr. Sterling's employment record shows that he voluntarily resigned for personal reasons.

Since the time of his resignation, Mr. Sterling has come to believe that his union did not provide him with adequate representation. Indeed, he argues before this Court that he was "forced" to resign because he believed that the union was unwilling to strive to preserve his employment. Mr. Sterling believes that the documentation concerning chain-of-custody is inadequate to support the positive drug test results which led to his resignation, and that the union failed to represent him adequately to the extent that it did not reach the same conclusion regarding chain-of-custody. Mr. Sterling has not filed an action in the state court alleging that his union breached its duty of fair representation. With this background in mind, we turn now to evaluate the merits of the parties' motions.

## DISCUSSION

### A. *Summary Judgment Standard*

This Court is authorized to award summary judgment "if the pleadings, depositions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The non-moving party must raise "more than a mere

scintilla of evidence in its favor" in order to overcome a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510–11). Further, the non-moving party cannot survive a summary judgment motion by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986)). Boiled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2512. Of course, the mere fact that the parties have filed cross-motions under Rule 56(c) does not mean that the case will necessarily be resolved at the summary judgment stage. The court must consider the motions separately. Each side must still establish that no genuine issue of fact exists and that it is entitled to judgment as a matter of law. *United States v. Hall*, 730 F.Supp. 646, 648 (M.D.Pa.1990) (citing *Home for Crippled Children v. Prudential Ins. Co.*, 590 F.Supp. 1490, 1495 (W.D.Pa.1984)).

### B. *Mr. Sterling's Due Process Claim*

Mr. Sterling alleges that he was denied a property interest without due process of law. Specifically, Mr. Sterling contends he was denied the opportunity to be heard prior to both his suspension and his termination. In order to succeed on such a claim, a public employee must show that (1) the adverse employment action deprived him of a property interest, and (2) the employer failed to provide him with notice of the charges against him and a meaningful opportunity to respond to those charges, unless exigent circumstances compel the employee's immediate removal or suspension. *Albrechta v. Borough of White Haven*, 810 F.Supp. 139 (M.D.Pa.1992) (citing *Richardson v. Felix*, 856 F.2d 505, 507 (3d Cir.1988)). The parties appear to agree that Mr. Sterling had a property interest in his job; thus, our brief analysis will focus on whether he was deprived of that interest without due process of law.

The Third Circuit Court of Appeals recently addressed a similar fact scenario in *Dykes v. SEPTA*, 68 F.3d 1564 (3d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1434, 134 L.Ed.2d 556 (1996), a case in which SEPTA terminated the employment of the plaintiff-bus operator after he refused to submit to a drug test. In his complaint, the plaintiff alleged that his Fourth Amendment right to be free from unreasonable searches and seizures was abrogated, and that he was deprived of the property interest he enjoyed in his employment without due process of law. The plaintiff specifically asserted, as Mr. Sterling asserts here, that SEPTA failed to provide him with a meaningful opportunity to be heard concerning the discharge, thereby violating the drug testing procedures. In concluding that the plaintiff failed to state a claim on which relief could be granted, the court stated:

> Our holding in *Bolden [v. SEPTA*, 953 F.2d 807 (3d Cir.1991), *cert. denied*, 504 U.S. 943, 112 S.Ct. 2281, 119 L.Ed.2d 206 (1992),]* establishes that even where a drug testing policy has been held to be constitutionally infirm, a public employee may not pursue a civil rights suit based upon that infirmity where his union and employer agree to operate under that policy.

*Id.* at 1570. Thus, in a situation like the one here, where a public employee brings a due process claim against his employer, and procedures regarding grievance and arbitration are in place, "those procedures satisfy due process requirements 'even if the hearing conducted by the Employer ... [was] inherently biased.'" *Id.* at 1571 (quoting *Jackson v. Temple Univ.*, 721 F.2d 931 (3d Cir.1983)).

Such reasoning applies to the instant case and compels us to award summary judgment to SEPTA. As we noted above, Mr. Sterling alleges that SEPTA deprived him of his right to due process in the manner in which it suspended and discharged him pursuant to its drug testing policy. Moreover, it is undisputed that both SEPTA and Mr. Sterling's union are bound by the procedure set forth in the Integrated Program. Finally, the facts educed during discovery demonstrate beyond reasonable dispute that the steps to achieve the termination of Mr. Sterling's em-

ployment were taken in accordance with the agreed-upon procedure. Even if there were some question as to whether SEPTA followed the procedure, however, *Dykes* would still require us to conclude that the instant action is not cognizable; and as a result, we must award summary judgment in favor of SEPTA.[2]

---

2. In light of our conclusion, we find it unnecessary to address the other arguments SEPTA makes in support of its motion.