**DIAMOND STATE INSURANCE
CO., Plaintiff,**

v.

**RANGER INSURANCE
CO., Defendant.**

No. CIV.A. 97–7815.

United States District Court,
E.D. Pennsylvania.

May 17, 1999.

Ronald T. Coleman, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, GA, R. Clay Porter, Dennis, Corry, Porter and Gray, Atlanta, GA, David Parsells, Stevens & Lee, Wayne, PA, for Plaintiff.

Beatrice O'Donnell, David L. Kwass, Duane, Morris & Heckscher, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

## I. INTRODUCTION

This is a declaratory judgment action between two insurance companies who supply truckers' liability insurance. Plaintiff, Diamond State Insurance Co. ("Diamond"), seeks a declaration as to its duty to provide a defense and primary coverage to certain insureds of defendant Ranger Insurance Co. ("Ranger") in an underlying wrongful death action. Diamond, as assignee of certain of its insureds' claims, also asserts a bad faith claim against Ranger. In response, Ranger has counterclaimed against Diamond also requesting declaratory relief, and contending that it did not act in bad faith. Before the Court are Diamond's and Ranger's cross-motions for summary judgment as to the priority of coverage, and Ranger's motion for partial summary judgment on the bad faith claim.

The Court concludes that Ranger, and not Diamond, is responsible for providing primary coverage and defense of certain of Ranger's insureds, and that Diamond is responsible for providing excess coverage. The Court also finds that, under the circumstances of this case, Ranger did not act in bad faith.

## II. FACTS

The following facts are undisputed. Diamond and Ranger are insurance companies that sell truckers' liability insurance. In 1993, Diamond issued a truckers' liability insurance policy to Kenneth Schuck Trucking, Inc. ("Schuck") with a policy limit of $1 million. The policy ran from June 15, 1993 to June 15, 1994. Also in 1993, Ranger issued a truckers' liability insurance policy to Aetna Freight Lines, Inc. ("Aetna") with a policy limit of $1 million. The policy ran from July 1, 1993 to July 1, 1994.

In 1993, Joe Gavalis, Sr. d/b/a Gavalis Trucking ("Gavalis Trucking") owned a 1985 Freightliner tractor and a Great Dane trailer ("truck"), which was operated by Joe Gavalis, Jr. ("Driver"). On March 15, 1993, Gavalis Trucking, as the lessor, leased the truck to Schuck, as the lessee, pursuant to a Transportation Agreement ("Long Term Lease"). The Long Term Lease had a term of one year, and was terminable by either party upon thirty days' notice. The Long Term Lease provided that Gavalis Trucking could sublease the truck to other motor carriers on behalf of Schuck, and that Schuck would be considered the owner of the truck for subleasing purposes.

On July 14, 1993, pursuant to the Long Term Lease with Schuck, the Driver for Gavalis Trucking completed a delivery from Gary, Indiana to Akron, Ohio. Thereafter, Schuck informed the Driver that there was no return load for the Driver at that time. The Driver then entered into a single trip sublease ("Trip Lease") with Aetna to transport a load of steel pipes from Girard, Ohio to Easton, Pennsylvania. According to federal regulations of the Interstate Commerce Commission

("I.C.C."), Aetna, as the sublessee, was required to provide placards to the Driver identifying Aetna as the motor carrier for whom the Driver was operating. However, Aetna never issued the requisite placards to the Driver. Nevertheless, and in accordance with the Trip Lease, the Driver traveled to Girard, Ohio where he picked up the load of steel pipes.

The following day, on July 15, 1993, and pursuant to the Trip Lease, while the Driver drove the truck through Schuylkill County, Pennsylvania on his way to the destination at Easton, Pennsylvania, the load of steel pipes fell from the truck into an automobile driven by Phyllis Adams ("Adams"), killing Adams. At the time of the accident, the truck did not display the requisite placards identifying Aetna as the responsible motor carrier. Rather, the truck displayed the identification placards previously issued by Schuck.

In 1995, the administrator of Adams' estate brought a wrongful death action in the Court of Common Pleas, Schuylkill County against six defendants, including the Driver, Gavalis Trucking, Schuck, and Aetna.[1] Diamond provided a defense for the Driver, Gavalis Trucking, and Schuck, while Ranger provided a defense for Aetna. In February, 1998, the wrongful death action settled for a total of $2.1 million, with $1.1 million attributed to the Driver, Gavalis Trucking, Schuck, and Aetna. To fund the settlement, Diamond and Ranger entered into a Letter Agreement, whereby Diamond agreed to pay $600,000.00 and Ranger agreed to pay $500,000.00. Both parties reserved their rights to determine whether Diamond and/or Ranger had a duty to provide a defense and primary coverage to the insureds. Diamond now demands that Ranger assume sole financial responsibility for providing a defense and primary coverage to the Driver and Schuck. In response, Ranger offered to share equally in the defense and coverage

costs for the Driver and Schuck, an offer that Diamond has rejected. Consequently, Ranger filed a counterclaim demanding that Diamond fund the entire settlement amount, and that Diamond and Ranger share the defense costs for the Driver, Schuck, and Aetna.

There are, therefore, four principal issues in this case: (1) are the Driver, Schuck, and Aetna insureds under the Diamond's and/or Ranger's insurance policies? (2) Is the Diamond policy primary or excess coverage? Correspondingly, is the Ranger policy primary or excess coverage? (3) Does the primary insurer, whether Diamond or Ranger, have a duty to provide a defense and indemnification to its insureds? (4) Did Ranger act in bad faith in denying full payment on its insureds' claim?

## III. LEGAL STANDARD

### A. *Summary Judgment.*

Summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court must accept the non-movant's version of the facts as true, and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of North America, Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied,* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once

---

1. Also named as defendants in the wrongful death action were the pipe shipper and the manufacturer of the allegedly faulty fastening straps, neither of whom are relevant parties to the instant declaratory judgment action.

the movant has done so, however, the non-moving party cannot rest on its pleadings. *See* Fed.R.Civ.P. 56(e). Rather, the non-movant must then "make a showing sufficient to establish the existence of every element essential to his case, based on the affidavits or by depositions and admissions on file." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir.1992); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When there are cross-motions, each motion must be considered separately, and each side must still establish a lack of genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *see also Sterling v. Southeastern Pennsylvania Transp. Auth.*, 926 F.Supp. 65, 68 (E.D.Pa. 1996) (citing *United States v. Hall*, 730 F.Supp. 646, 648 (M.D.Pa.1990)); Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720.

**B.** Review of Insurance Contracts Under Pennsylvania and *Ohio Law.*[2]

■ Under Pennsylvania law, it is the province of the court to interpret contracts of insurance. *See Niagara Fire Ins. Co. v. Pepicelli, Pepicelli, Watts and Youngs, P.C.*, 821 F.2d 216, 219 (3d Cir.1987). The primary consideration in interpreting an insurance contract is "to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). In doing so, "an insurance

policy must be read as a whole [by the court] and construed according to the plain meaning of its terms." *C.H. Heist Caribe Corp. v. American Home Assurance Co.*, 640 F.2d 479, 481 (3d Cir.1981); *see also Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 531 A.2d 487, 489 (1987) ("[The court] must construe a contract of insurance as a whole and not in discrete units."). Where a provision of a contract of insurance is ambiguous, the provision must be construed in favor of the insured, and against the insurer, the drafter of the contract. *See Standard Venetian Blind Co.*, 469 A.2d at 566. However, "a court should read policy provisions to avoid ambiguities, if possible, and not torture the language to create them." *St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981).

■ An insurer's duty to defend an insured arises "whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). The duty to defend is triggered even if the complaint asserting claims against the insured is groundless, false, or fraudulent. *See American States Ins. Co. v. State Auto Ins. Co.*, 721 A.2d 56, 59 (Pa.Super.1998) (citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 188 A.2d 320, 321 (1963)). In determining whether the complaint asserts a claim against the insured to which the policy potentially applies, the factual allegations of the complaint are controlling. *See id.* at 760; *Humphrey's v. Niagara Fire Ins. Co.*, 404 Pa.Super. 347, 590 A.2d

**2.** The parties agree that Pennsylvania law applies to the insurance contract issues in this case because: (1) the Long Term Lease between Schuck and Gavalis Trucking is a Pennsylvania contract; (2) the insurance policy issued by Diamond to Schuck is a Pennsylvania contract; and (3) the accident occurred in Pennsylvania, with the injured party being a citizen of Pennsylvania. However, Ranger also asserts that this Court should give due weight to Ohio law where Pennsylvania law has no contrary authority because: (1) the Trip Lease executed by Aetna is an Ohio con-

tract; (2) the insurance policy issued by Ranger to Aetna is an Ohio contract; and (3) the loading of the pipes onto the truck occurred in Ohio.

The parties also agree that Pennsylvania law applies to the bad faith issues, and have accordingly based their arguments on the Pennsylvania bad faith statute and Pennsylvania case law. Therefore, the Court concludes that it will apply Pennsylvania law to both the insurance contract and bad faith issues, but will give due consideration to Ohio law, as needed.

1267, 1271 (1991), *appeal denied,* 528 Pa. 637, 598 A.2d 994 (1991). If the factual allegations of the complaint, taken as true and construed liberally, state a claim to which the policy potentially applies, the insurer must defend, unless and until it can narrow the claim to a recovery that the policy does not cover. *See Cadwallader v. New Amsterdam Cas. Co.,* 396 Pa. 582, 152 A.2d 484, 488 (1959); *Biborosch v. Transamerica Ins. Co.,* 412 Pa.Super. 505, 603 A.2d 1050, 1052 (1992), *appeal denied,* 532 Pa. 653, 615 A.2d 1310 (1992). To determine whether a claim may potentially come within the coverage of a policy, the court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint. *See Britamco Underwriters, Inc. v. Grzeskiewicz,* 433 Pa.Super. 55, 639 A.2d 1208, 1210 (1994).

 On the other hand, the duty to defend is a distinct obligation separate from an insurer's duty to indemnify. *See Erie Ins. Exchange v. Transamerica Ins. Co.,* 516 Pa. 574, 533 A.2d 1363, 1368 (1987). The duty to indemnify is more limited than an insurer's duty to defend, and "arises only when the insured is determined to be liable for damages within the coverage of the policy." *Britamco Underwriters, Inc. v. Logue's Tavern, Inc.,* No. 95–2997, 1995 WL 710570, at *2 (E.D.Pa. Dec.1, 1995). The burden is on the insured to establish coverage under an insurance policy. *See Erie Ins. Exchange,* 533 A.2d at 1366–67.

## IV. ANALYSIS

### A. Who Is An Insured Under Diamond's and Ranger's *Policies?*

To determine which party owes a duty to defend and to provide primary coverage, the Court must ascertain who is an insured under the parties' respective policies, the scope of the coverage as to each insured, and whether the factual allegations within the underlying complaint potentially fall within that scope. In its analysis, the Court observes that significant parts of the insurance policies issued by Diamond and Ranger are identical, particularly the Truckers' Coverage Form. The Truckers' Coverage Form defines an insured as follows:

SECTION II LIABILITY COVERAGE

A. COVERAGE

1. WHO IS AN INSURED

The following are "insureds":

a. You for any covered "auto".

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .

c. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or if not connected:

 (1) Is being used exclusively in your business as a "trucker"; and

 (2) Is being used pursuant to operating rights granted to you by a public authority.

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is not a "trailer" while the covered "auto":

 (1) Is being used exclusively in your business as a "trucker"; and

 (2) Is being used pursuant to operating rights granted to you by a public authority.

e. Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

Pl.'s Am. Compl., Ex. A., § II(A)(1). Accordingly, the Court must apply this contractual definition to determine who is an insured under Diamond's and Ranger's insurance policies.

### The Driver, Schuck, and Aetna are all insureds *under Diamond's insurance policy.*

The parties agree that both the Driver and Schuck are insureds under Diamond's

insurance policy. Pursuant to Section II(A)(1)(b) of Diamond's policy, the Driver is a permissive user, which is defined as "[a]nyone else while using with permission a covered 'auto' you [Schuck] own, hire or borrow...." Pl.'s Am. Compl., Ex. A, § II(A)(1)(b). In accordance with the Long Term Lease between Gavalis Trucking and Schuck, the Driver was operating a covered truck leased by Schuck with Schuck's permission. Therefore, the Court concludes that the Driver is insured as a permissive user under Diamond's insurance policy. The parties also do not dispute, and the Court so finds, that Schuck is insured under Diamond's insurance policy as the named insured.

■ As for Aetna, Ranger asserts that its named insured, Aetna, is also an insured under Diamond's insurance policy, and Diamond concedes that such a conclusion is arguable. Pl.'s Mot. for Summ. J., at 14. Ranger argues that Aetna is insured under Diamond's policy as "anyone liable for the conduct of an 'insured' [the Driver] described above but only to the extent of that liability." Pl.'s Am. Compl., Ex. A, § II(A)(1)(e). Here, Aetna is vicariously liable for the Driver's conduct in that the Driver was operating the truck pursuant to the Trip Lease with Aetna. Since the Driver is an insured under Diamond's policy as a permissive user, therefore, the Court finds that Aetna is an insured under Diamond's policy.

The Driver, Schuck, and Aetna are all insureds *under Ranger's insurance policy.*

It is undisputed that the Driver and Aetna are also insured under Ranger's insurance policy. As with Diamond's policy, the Driver qualifies as a permissive user under Ranger's policy because the Driver, acting pursuant to the Trip Lease executed by Aetna, was operating a covered truck leased by Aetna with Aetna's permission. Thus, the Court concludes that the Driver is an insured under Ranger's insurance policy as a permissive user.

The Court also finds that Aetna, the named insured, is an insured under Ranger's policy.

Although the parties agree that Schuck is an insured under Ranger's insurance policy, the parties disagree as to which particular provision applies to establish Schuck's status as an insured. It is undisputed that Schuck is an insured under Ranger's policy as "anyone liable for the conduct of an 'insured' [the Driver] described above but only to the extent of that liability." Pl.'s Am. Compl., Ex. B, § II(A)(1)(e). Here, Schuck is vicariously liable for the Driver's conduct pursuant to the Long Term Lease, and the Driver is an insured under Ranger's policy as a permissive user. Therefore, the Court finds that Schuck is an insured under Ranger's policy due to its vicarious liability for the Driver's conduct in relation to the Long Term Lease.

In addition to being insured under Ranger's policy as vicariously liable for the Driver's conduct, Diamond asserts that Schuck is also insured under Ranger's policy as "the owner or anyone else from whom you [Aetna] hire or borrow a covered 'auto' that is not a 'trailer' while the covered 'auto': (1) is being used exclusively in your [Aetna] business as a 'trucker'; and (2) is being used pursuant to operating rights granted to you [Aetna] by a public authority." Pl.'s Am. Compl., Ex. B, § II(A)(1)(d). Section II(A)(1)(c) provides similar coverage for the trailer.

Diamond's reasoning is based on three provisions contained within the Long Term Lease between Gavalis Trucking and Schuck, which read: (1) "[Schuck] shall have the exclusive possession, control and use of the equipment"; (2) "[Gavalis Trucking] shall not use the equipment to transport commodities in the name of or for the account of any party other than [Schuck], provided, [Gavalis Trucking] may enter subleases as agent on [Schuck's] behalf ....."; and (3) "[Schuck] may sublease to other regulated carriers or others any equipment with driver ... and shall be

considered the owner of the equipment for such purposes." Pl.'s Mot. for Summ. J., Ex. A, ¶¶ 6, 9, 10. Therefore, Diamond argues, Schuck is insured against all liability under Ranger's policy as the owner of a covered truck leased by Aetna that was used exclusively in Aetna's business as a trucker.

Ranger disagrees with Diamond's position, and contends that Schuck is not insured against all liability under Ranger's policy as the owner of a covered truck leased by Aetna that was used exclusively in Aetna's trucking business. Ranger asserts that Schuck is not an insured under §§ II(A)(1)(c) and (d) of Ranger's policy because the Trip Lease was executed between Aetna, the sublessee, and Gavalis Trucking as the owner and sublessor of the truck, not between Aetna and Schuck. As such, Ranger argues that Schuck is only covered for its vicarious liability as a result of the Driver's actions, and not the direct negligence of Schuck itself, which Ranger contends in fact caused the accident.

Ranger relies upon *Gilstorff v. Top Line Express, Inc.*, 106 F.3d 400 (6th Cir.1997) (unpublished table decision), to support its argument that Schuck was not a party to the Trip Lease. In *Gilstorff*, a trucker [Hickman] had a long term lease with a trucking company [Top Line]. A driver for the trucker [Smith] entered into a trip lease with another trucking company [MTC]. While the trip lease was in effect, the driver had an accident, and the insurers for each of the trucking companies [Vanliner and Pacific Employers] disputed who was responsible for primary coverage. On a motion for summary judgment, the district court concluded in part that the trip lessee [MTC] had in fact leased the truck from the long term lessee [Top Line], and not from the driver of the

trucker [Smith]. On appeal, the Sixth Circuit reversed, finding that the driver [Smith], on behalf of the trucker [Hickman], and the trip lessee [MTC] were the only named parties to the contract, not the long term lessee [Top Line]. *See id.* at *3. The court of appeals reasoned that such a finding was consistent with, among other factors, a general provision in the long term lease that the trucker [Hickman] was not an agent for the long term lessee [Top Line]. *See id.*

■ In contrast to *Gilstorff*, in this case, the Long Term Lease between the long term lessee [Schuck] and the trucker [Gavalis Trucking] explicitly provides that the trucker [Gavalis Trucking] acts an agent of the long term lessee [Schuck] for the purposes of subleasing. Pl.'s Mot. for Summ. J., Ex. A, at ¶ 9. The Long Term Lease also provides that, with regard to subleasing, Schuck shall be considered the owner of the vehicle, not Gavalis Trucking. *Id.* at ¶ 10. Notwithstanding that Gavalis Trucking is identified on the Trip Lease with Aetna as the "authorized operating carrier," the Long Term Lease expressly designates Gavalis Trucking as an agent of Schuck for the purposes of subleasing. Thus, the Court finds that pursuant to the terms of the Long Term Lease, the Trip Lease was in fact between Aetna and Schuck, as the owner of the truck for subleasing uses, and not between Aetna and Gavalis Trucking.

■ In order for Schuck to be insured against all liability under §§ II(A)(1)(c) and (d) of Ranger's policy, in addition to being a party to the Trip Lease, the truck must have been used exclusively in Aetna's business as a trucker.[3] Pl.'s Am. Compl., Ex. B, § II(A)(1)(d). Ranger contends that the truck was not being exclusively used in Aetna's business as a trucker be-

---

3. Although Ranger does not dispute in this context whether the truck was used exclusively in Aetna's business as a trucker, Ranger later raises the argument in relation to another contract provision, the "Other Insurance" clause, addressed *infra*. The Court will ad-

dress in this section Ranger's arguments regarding exclusive use of the truck in Aetna's business as a trucker, and will apply the above analysis to the forthcoming discussion of the "Other Insurance" clause.

cause Schuck, pursuant to the Long Term Lease with Gavalis Trucking, derived substantial monetary benefit from the sublease of the truck, which negates exclusive use in Aetna's trucking business.

Based on two provisions in the Ranger policy, the Court finds no merit to Ranger's argument. First, the Trip Lease between Aetna and Schuck provides that "The BROKER [Schuck] shall ... [f]urnish[ ] the CARRIER [Aetna] such exclusive, possession, control, and the use of the Equipment that the CARRIER [Aetna] may require to fulfill requirements placed on it by the I.C.C. and all other applicable regulations (which exclusive possession, use, and control is hereby accepted by CARRIER [Aetna])...." Pl.'s Mot. for Summ. J., Ex. B. The clear terms of the Trip Lease indicate that the truck was exclusively possessed, controlled, and used by Aetna, which contradicts Ranger's assertion that the truck was not exclusively used in Aetna's business as a trucker. Second, Ranger's policy defines "trucker" as "any person or organization engaged in the business of transporting property by 'auto' for hire." Pl.'s Compl, Ex. B. In fact, the truck was hired by Aetna and used for exactly that purpose. Thus, pursuant to the Trip Lease, Aetna subleased the truck for the purposes of transporting a load of steel pipes to Easton, Pennsylvania, which the Driver was attempting to effectuate when the accident occurred. Aetna does not suggest that the Driver transported a load for another motor carrier, or operated the truck for any reason other than to perform the duties under the Trip Lease. The fact that Schuck may have received a financial benefit from the Trip Lease is incidental to whether the truck was exclusively used in Aetna's business as a trucker.

Therefore, construing the Ranger policy against Ranger, the drafter of the policy, and in favor of coverage, and given the contractual language in the Trip Lease, and the absence of facts showing that the truck was used for a purpose other than transporting the load of steel pipes as per Aetna's instructions, the Court finds that the truck was used exclusively in Aetna's business as a trucker. The Court concludes that Schuck is insured under §§ II(A)(1)(c) and (d) against all liability under Ranger's policy as the owner of a covered truck leased by Aetna which was used exclusively in Aetna's trucking business.

### B. *Priority Of Coverage Among The Parties.*

Having jointly funded the settlement of the underlying wrongful death action for $1.1 million under a reservation of rights, Diamond and Ranger now dispute which of them must provide primary coverage up to their policy limits of $1 million, and which one is responsible for the $100,000.00 excess coverage beyond $1 million. In resolving the primary versus excess dispute, the Court must consider the parties' positions in light of the federal regulations as imposed by the Interstate Commerce Commission ("I.C.C."), and the "Other Insurance" clause within the parties' insurance policies.

### 1. *The Driver's use of Schuck's I.C.C. placards does not impose primary coverage upon Diamond as a matter of law.*

Ranger asserts that Diamond, as a matter of law, is responsible for primary coverage for the accident. In making this assertion, Ranger relies upon the decision by the Ohio Supreme Court in *Wyckoff Trucking, Inc. v. Marsh Bros. Trucking Serv., Inc.*, 58 Ohio St.3d 261, 569 N.E.2d 1049 (1991), which held that in a dispute between a long-term lessee [Schuck] and a short term lessee [Aetna], primary coverage rests with whichever carrier (1) has entered into a lease with the trucker, and (2) has its I.C.C. placards displayed at the time of the accident. Ranger argues that under *Wyckoff,* Schuck is primarily liable for the accident because it entered into a lease with Gavalis Trucking and the truck

displayed Schuck's placards at the time of the accident. Ranger urges the Court to apply the holding in *Wyckoff* so as to impose primary coverage upon Diamond as a matter of law due to Diamond's status as the insurer of Schuck, the party whose placards were displayed at the time of the accident.

In *Wyckoff*, Wyckoff Trucking ("Wyckoff"), a trucking company, owned a tractor-trailer that was subject to a long-term lease with C.J. Rogers Trucking Co. ("Rogers"). Rogers had exclusive possession and control of the tractor-trailer, but Wyckoff was permitted to enter into trip leases with other motor carriers when Rogers was not using the tractor-trailer. Wyckoff, via an authorized driver, entered into a trip lease with Marsh Brothers Trucking Service, Inc. ("Marsh") to deliver a load of steel. While on route to picking up the load, the driver for Wyckoff was involved in an accident. At the time of the accident, Rogers' I.C.C. placards were displayed on the tractor-trailer. The victim sued Wyckoff in state court, who, in turn, filed a declaratory judgment action to determine whether Rogers or Marsh, and their respective insurers, had a duty to defend and indemnify Wyckoff and the driver.

The Ohio Supreme Court found that primary liability rested with Rogers, the long-term lessee. The court relied upon the I.C.C. regulations, specifically, 49 C.F.R. § 1057.12. Section 1057.12 requires that every lease entered into by an I.C.C.-licensed motor carrier must contain language indicating that the carrier maintain "exclusive possession, control, and use of the equipment for the duration of the lease" and "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c). The *Wyckoff* court interpreted § 1057.12(c) as creating an "irrebuttable presumption of an employment relationship between the carrier-lessee and the driver of a vehicle that displays the I.C.C. identification numbers of the carri-

er-lessee." *Wyckoff*, 569 N.E.2d at 1054. Thus, according to *Wyckoff*, "in order for liability to attach on an interstate carrier-lessee under I.C.C. regulations, it must be established that at the time the cause of action arose, (1) a lease of the vehicle was in effect and (2) the vehicle displayed the carrier-lessee's placard listing its I.C.C. numbers." *Id.* The court reasoned that a bright-line rule that dictated primary liability would "remove[ ] the factual confusion attendant to determining which party is responsible for damages, thus relieving the innocent victim from the sometimes interminable delays that accompany multiple-party litigation ... and forcing the trucking companies to allocate the various indemnification agreements among themselves." *Id.*

Some Ohio appellate courts have held that, in cases of multiple coverage, the presumption of statutory employment created in *Wyckoff* should also apply to the question of which insurance company has primary responsibility for coverage. *See Gulick v. Costain Coal, Inc.,* No. 95–24, 1996 WL 608452, at *3 (Ohio Ct.App. Oct. 9, 1996); *Canal Ins. Co. v. Brogan,* 93 Ohio App.3d 765, 639 N.E.2d 1219, 1222 (Ohio Ct.App.1994) ("[A]lthough *Wyckoff* emphasizes the benefit to the public from the scheme for determining liability espoused therein, *Wyckoff* is clearly also meant to settle issues of liability as to the carrier-lessee, the lessor, and their respective insurers."); *Ohio Cas. Ins. Co. v. United S. Assurance Co.,* 85 Ohio App.3d 529, 620 N.E.2d 163, 165–66 (1993). In other words, the insurer of the party who furnished the I.C.C. identification placards displayed on the vehicle at the time of the accident is irrefutably found to have primary responsibility for coverage. Courts that have applied *Wyckoff* in this manner cite the twin goals of clarity and consistency as the rationale. *See Ohio Cas.,* 620 N.E.2d at 165–66.

In contrast, other Ohio appellate courts, and an unpublished Sixth Circuit decision, have "limited *Wyckoff* to its literal applica-

tion as between the innocent victim and an interstate carrier-lessee whose I.C.C. number appears on the vehicle, because *Wyckoff* itself indicates that the statutory employer may seek contribution and/or indemnification from other potentially responsible parties." *Gilstorff v. Top Line Express, Inc.*, 106 F.3d 400, 1997 WL 14378, at *3 (6th Cir. Jan.14, 1997) (unpublished decision) (citing *Tolliver v. Braden*, 112 Ohio App.3d 86, 677 N.E.2d 1249, 1250 (1996) ("*Wyckoff* does not prevent the carrier deemed to be the statutory employer from seeking indemnification or contribution, nor does it nullify contracts between parties who are not members of the protected class and who are in a position to determine the relationships among the parties."); *Harco Nat'l Ins. Co. v. America Inter–Fidelity, Inc.*, No. L–93–313, 1994 WL 530834, at *2 (Ohio Ct.App. Sept. 30, 1994); *Balez–Pierce v. Price and Boyce, Inc.*, 86 Ohio App.3d 119, 619 N.E.2d 1194, 1196 (1993); *Roseberry v. Balboa Ins. Co.*, 90 Ohio App.3d 33, 627 N.E.2d 1062, 1064–65 (1993); *Lime City Mut. Ins. Ass'n v. Mullins*, 83 Ohio App.3d 517, 615 N.E.2d 305, 308–09 (1992)).

The parties have agreed that Pennsylvania law applies generally to the case. Ranger has also suggested that, where appropriate, Ohio law may fill the interstice. *See supra* note 2. Since Pennsylvania law is silent on the subject and Ohio law is well developed, and in the absence of any Pennsylvania recognizable interest that would be adversely affected, the Court will give due weight to Ohio law on this issue.

■ In the absence of a statement from the Ohio Supreme Court, this Court is called upon to predict whether the Ohio Supreme Court would apply *Wyckoff* to resolve the issue of the priority of insurance coverage between multiple insurers. *See City of Philadelphia v. Lead Indus. Ass'n, Inc.*, 994 F.2d 112, 123 (3d Cir.1993) ("When the state's highest court has not addressed the precise question presented,

a federal court [presiding over a diversity case] must predict how the state's highest court would resolve the issue."). A federal court charged with predicting how a state's highest court would decide an issue must consider "'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue.'" *Charles Shaid of Pennsylvania, Inc. v. George Hyman Constr. Co.*, 947 F.Supp. 844, 852 (E.D.Pa.1996) (quoting *Nationwide Ins. Co. v. Resseguie*, 980 F.2d 226, 230 (3d Cir.1992)). In predicting a decision of a state's highest court, "a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts." *Clark v. Modern Group Ltd.*, 9 F.3d 321, 327 (3d Cir.1993) (citations omitted).

■ In light of the aforementioned factors, this Court predicts that the Ohio Supreme Court would not apply the rule in *Wyckoff* to determine primary coverage between multiple insurers. First, the purpose of strictly construing the I.C.C. regulations in *Wyckoff* was to advance the interests of the public at large by "unmistakably fix[ing] liability for the accident instead of essentially forcing the innocent victim to sue everyone in order to redress his injuries and damages." *Wyckoff*, 569 N.E.2d at 1053. By contrast, the need for consistency and clarity, the policy rationale courts have advanced to justify their extension of *Wyckoff* to coverage litigation between multiple insurers, a goal that, while not unlaudable itself, is far removed from the victim-oriented purpose of the *Wyckoff* bright-line rule. Second, the Ohio Supreme Court in *Wyckoff* had an opportunity to apply the bright-line rule to resolve the coverage disputes between multiple insurers, in that case, but expressly declined to do so. Rather, the *Wyckoff* court remanded the action to the trial court for a determination of "the various rights and responsibilities of the par-

**590**

ties involved with respect to any claims of contribution or indemnification [among the parties]. . . ." *Id.* at 1054 n. 2. In effect, the Ohio Supreme Court in *Wyckoff* carved out a rule for the narrow purpose of protecting innocent victims involved in accidents with trucks. It did not, however, broadly sweep aside principles of common law and the parties' own agreements to satisfy the claimed need for clarity and consistency in resolving questions of coverage concerning multiple insurers. Therefore, this Court predicts that the Ohio Supreme Court would not extend *Wyckoff* in the manner so urged by Ranger.

Under slightly different facts, but similar procedural posture, the Third Circuit, applying Delaware law, arrived at the same conclusion. In *Carolina Cas. Ins. Co. v. Insurance Co. of N. Amer.*, 595 F.2d 128 (3d Cir.1979), the lessor of a truck and its insurer brought a declaratory judgment action seeking a declaration that the lessee and its insurer had the primary duty to defend and provide coverage for an accident involving a leased vehicle that arose while transporting goods on the lessee's behalf. The Third Circuit rejected the lessor's argument that the court should only consider the I.C.C. regulations and the public policies served thereby in conducting its analysis, reasoning that "where the case is 'concerned with responsibility as between insurance carriers,' and not with the federal policy of protecting the public, 'I.C.C. considerations are not determinative' and a court should consider the express terms of the parties' contracts.". *Id.* at 138 (quoting *Allstate Ins. Co. v. Liberty Mut. Ins. Co.*, 368 F.2d 121, 125 (3d Cir.1966)).

In this case, and as the court of appeals did in *Carolina*, the Court is not determining a duty owed by a motor carrier lessee and its insurer to the injured public. Rather, the Court is determining which insurer, Diamond or Ranger, must bear the ultimate financial responsibility for the injury to the victim. Given the Court's prediction that the Ohio Supreme Court would not apply the decision in *Wyckoff* to disputes over coverage between multiple insurers, and consistent with the Third Circuit's application in *Carolina*, the Court concludes that the bright-line rule of *Wyckoff* is not applicable to determining which insurer, Diamond or Ranger, bears the financial responsibility for the injury to the victim. Therefore, Ranger's cross-motion for summary judgment will be denied.

2. *The "Other Insurance" clause dictates primary versus excess coverage.*

Having concluded that application of the relevant I.C.C. regulations does not determine which insurer, Diamond or Ranger, is responsible for providing primary coverage, the Court must now resort to an analysis of the insurers' individual policies. The provision that distinguishes between primary and excess coverage is the "Other Insurance" clause. In this case, the "Other Insurance" clause is identical in Diamond's and Ranger's respective insurance policies.

Relevant portions of the "Other Insurance" clause read as follows:

SECTION V—TRUCKERS CONDITIONS

B. GENERAL CONDITIONS

5. OTHER INSURANCE—PRIMARY AND EXCESS INSURANCE PROVISIONS

a. This Coverage Form's Liability Coverage is primary for any covered "auto" while hired or borrowed by you and used exclusively in your business as a "trucker" and pursuant to operating rights granted by you by a public authority. This Coverage Form's Liability Coverage is excess over any other collectible insurance for any covered "auto" while hired or borrowed from you by another "trucker".

. . .

c. Except as provided in paragraphs a. and b. above, this Coverage Form provides primary insurance for any covered "auto" you own and excess insurance for any covered "auto" you don't own.

. . .

f. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

Pl.'s Am. Compl., Ex. A.

█ Diamond, applying § V(B)(5)(a) of the "Other Insurance" clause, contends that Ranger's coverage is primary, and any coverage provided by Diamond is excess. In contrast, Ranger asserts that § V(B)(5)(a) is inapplicable to the Driver for two reasons: (1) § V(B)(5)(a) only applies to named insureds, which does not include the Driver; and (2) the truck was not used exclusively in Aetna's business as a trucker.

The Court finds no merit in either of Ranger's assertions. In light of the fact that the truck was dispatched by Aetna and the Driver was performing pursuant to a Trip Lease executed by Aetna, the Court has already concluded that the truck was used exclusively in Aetna's business as trucker. As applied to Ranger, § V(B)(5)(a) indicates that Ranger will provide primary coverage "for any covered 'auto' while *hired or borrowed by you* [Aetna] and used exclusively in your [Aetna] business as a 'trucker' and pursuant to operating rights granted to you [Aetna] by a public authority." (emphasis added). Ranger's policy is excess over other insurance "for any 'auto' while *hired or borrowed from you [Aetna] by another*

*'trucker'.*" (emphasis added). The clear and unambiguous terms of the policy reveal that because Aetna hired a truck in accordance with the Trip Lease, and because that truck was used exclusively in Aetna's business as a trucker, Ranger's policy becomes primary.

Applying those same provisions of § V(B)(5)(a) to Diamond, coverage provided by Diamond is excess because the truck was hired from Schuck by Aetna pursuant to the Trip Lease. Diamond's coverage is not primary because Schuck did not hire a truck that was used exclusively in Schuck's business as a trucker. Thus, Diamond's coverage is excess over Ranger's coverage because the truck was hired from Schuck by Aetna pursuant to the Trip Lease.

Having concluded that Ranger must provide primary coverage and Diamond's coverage is excess, Diamond's motion for summary judgment as to the issue of coverage will be granted, and Ranger's cross-motion for summary judgment will be denied.

C. *Ranger has a duty to provide a defense and indemnification.*

Generally, the primary insurer has the duty to "conduct all of the investigation, negotiation and defense of claims until its limits are exhausted...." 7C Appleman, *Insurance Law and Practice* (Berdal ed.) § 4682, at 28. *See also Contrans, Inc. v. Ryder Truck Rental, Inc.,* 836 F.2d 163, 171–72 (3d Cir.1987) (finding that the primary insurer had a duty to defend its insured in an underlying action, that the excess insurer was not required to provide coverage until the limits of the primary policy is exhausted, and that the primary insurer must reimburse the excess insurer for any defense costs already incurred by the excess insurer). Thus, Ranger, as the primary insurer in this case, owes a duty to defend if the allegations of the underlying complaint potentially fall within the scope of the coverage. *See Pacific Indem. Co. v. Linn,* 766 F.2d 754, 760 (3d Cir. 1985).

The underlying complaint alleged numerous causes of actions against the Driver, Schuck, and Aetna: (1) negligence by the Driver; (2) negligence by Schuck; (3) vicarious liability of Schuck; (4) vicarious liability of Aetna; (5) negligence by Aetna; (6) wrongful death against all defendants; and (7) survival action against all defendants. Section II(A) of the Truckers' Coverage Form utilized by Ranger specifies which claims are covered:

> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".... We have the right and duty to defend any "suit" asking for such damages....

Pl.'s Am. Compl., Ex. B.

It is undisputed that the damages sought by Adams' estate from Ranger's insureds, i.e., the Driver, Schuck and Aetna, were for bodily injury to Adams caused by an accident, and resulted from ownership, maintenance, or use of a covered truck. Therefore, all of the claims against the Driver, Schuck, and Aetna, Ranger's insureds, may potentially fall within the scope of coverage as defined in Ranger's policy, and Ranger, as the primary insurer has a duty to defend its insureds.

 Given that Ranger failed to provide a defense to the Driver and Schuck, Diamond, as the excess insurer, can recover from Ranger the costs of defending the Driver and Schuck. *See Aetna Cas. & Sur. Co. Personal Fin. Sec. Div. v. Hertz Corp.*, No. 91–5238, 1993 WL 276835, at *5 (E.D.Pa.1993) (" 'The traditional view is that an excess insurer is not required to contribute to the defense of the insured so long as the primary insurer is required to defend.' ") (quoting Ostrager & Newman, *Handbook on Insurance Coverage Disputes* (9th ed.) § 6.03(b)). Thus, Ranger is directed to reimburse Diamond the amount of $108,748.80 for the costs of defending the Driver and Schuck.

Additionally, Ranger bears the financial responsibility to provide primary coverage to the Driver, Schuck, and Aetna. The settlement amount in the underlying action attributable to the Driver, Schuck, and Aetna is $1.1 million. As the primary insurer, Ranger is liable for the full amount of its policy limit of $1 million. As the excess insurer, Diamond is only responsible for the remaining $100,000.00 that is beyond Ranger's $1 million policy limit. To fund the settlement, Diamond has paid $600,000.00 and Ranger has only paid $500,000.00. Therefore, Ranger is directed to reimburse Diamond the amount of $500,000.00, the surplus that was paid by Diamond to fund the settlement.

### D. *Diamond's Bad Faith Claim Against Ranger.*

Subsequent to the settlement of the underlying wrongful death action, the Driver and Schuck assigned to Diamond any bad faith claims they may have had against Ranger as ranger's insureds. Consequently, Diamond, as assignee, has asserted a bad faith claim against Ranger, alleging that Ranger unreasonably failed to provide a defense and primary coverage to Ranger's insureds, the Driver and Schuck. In rebuttal, Ranger filed a motion for partial summary as to Diamond's bad faith claim on the grounds that such a bad faith claim is barred by a prior agreement of counsel.

### 1. *Diamond's bad faith claim against Ranger is not barred by a prior agreement of counsel.*

The underlying wrongful death action was settled for a total of $2.1 million, with $1.1 million dollars attributable to the Driver, Gavalis Trucking, Schuck, and Aetna. Under the settlement agreement, Diamond contributed $600,000.00 and Ranger contributed $500,000.00 on behalf of the insureds. In a Letter Agreement dated February 11, 1998, Diamond and Ranger agreed to the following:

Ranger Insurance Company and Diamond State Insurance Company / Assicurazioni Generali, S.p.A. expressly reserve all rights to recover from each other for their respective contributions to this settlement. Ranger Insurance Company and Diamond State Insurance Company / Assicurazioni Generali, S.p.A. agree that Ranger's exposure to reimburse Diamond State Insurance Company / Assicurazioni Generali, S.p.A. for payments made in the above described settlement shall not exceed $500,000, which represents the balance on Ranger's Insurance Company's policy limits. Def.'s Mot. for Partial Summ. J., Ex. A.

On April 18, 1998 and May 12, 1998, the Driver and Schuck each assigned to Diamond "all rights, claims or causes of action which the Assignor has or may have in respect to the insurance coverage provided or claimed to be owed to Assignor by RANGER INSURANCE COMPANY...." Pl.'s Mot. for Summ. J., Exs. K, L. The assignments specifically indicated that the "Assignor expressly assigns any and all rights of action it may have to Diamond State Insurance Company, including but not limited to ... any claims asserting that Ranger Insurance Company acted in bad faith in any respect in regard to the said policy, accident or litigation set forth above." *Id.*

Subsequently, Diamond asserted a claim of bad faith against Ranger. In its motion for partial summary judgment, Ranger contends that Diamond's bad faith claim is barred by language in the Letter Agreement that limits Ranger's overall exposure to the policy limits, specifically, "Ranger Insurance Company and Diamond State Insurance Company / Assicurazioni Generali, S.p.A. agree that Ranger's exposure to reimburse Diamond State Insurance Company / Assicurazioni Generali, S.p.A. for payments made in the above described settlement shall not exceed $500,000, which represents the balance on Ranger's Insurance Company's policy limits." Diamond retorts that the Letter Agreement

did not contemplate the individual bad faith causes of action, and that the Letter Agreement does not limit the causes of action Diamond may assert against Ranger, nor does the Letter Agreement limit Ranger's overall exposure.

 The Court concludes that Ranger's reliance upon the cited language in the Letter Agreement is misplaced. The Letter Agreement expressly provides that Ranger's *"exposure to reimburse Diamond [ ] for payments made* in the above described settlement shall not exceed $500,000." (emphasis added). The express language of the Letter Agreement provides only that should Ranger be found responsible to provide primary coverage and a defense to the insureds, Ranger will reimburse Diamond for the $500,000.00 Diamond has already contributed to fund the settlement of the underlying case. There is nothing within the Letter Agreement that either bars Diamond's bad faith claim or specifically reserves Diamond's right to pursue a bad faith claim. Nor does the Letter Agreement broach the subject of separate causes of actions that could have been brought by either party. " 'To constitute a waiver of [a] legal right, there must be clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it.' " *2101 Allegheny Associates v. Cox Home Video*, No. 91–2743, 1991 WL 225008, at *7 (E.D.Pa. Oct.29, 1991) (quoting *Brown v. Pittsburgh*, 409 Pa. 357, 186 A.2d 399, 401 (1962)). The Letter Agreement does not support the contention that Diamond clearly and unambiguously agreed to waive its right to assert a bad faith claim against Ranger.

*2. Ranger did not act in bad faith.*

 Under Pennsylvania law, 42 Pa. Cons.Stat. Ann. § 8371, an insured may recover an award of special damages, such as interest, punitive damages, costs and attorney fees, if the insured can show that an insurer acted in "bad faith" towards an insured. *See* 42 Pa. Cons.Stat.

Ann. § 8371. Although § 8371 does not define "bad faith," in the insurance context, however, "bad faith" has acquired a universally acknowledged meaning:

> "Bad faith" on [the] part of [the] insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Klinger v. State Farm Mut. Auto. Ins. Co.,* 115 F.3d 230, 233 (3d Cir.1997) (quoting *Terletsky v. Prudential Prop. and Cas. Ins. Co.,* 437 Pa.Super. 108, 649 A.2d 680, 688 (1994)). "[T]o recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Id.* Although mere negligence or bad judgment does not constitute bad faith, the Third Circuit has rejected a requirement that a plaintiff must show that the insurer was motivated by an improper purpose, such as ill will or self-interest. *See Klinger,* 115 F.3d at 233–34. Bad faith, however, must be proven by clear and convincing evidence, and not merely insinuated. *See Terletsky,* 649 A.2d at 688.

In support of its bad faith claim, Diamond puts forth the following evidence: (1) prior to settlement of the underlying wrongful death action, counsel for the Driver and Schuck each demanded that Aetna via its insurer, Ranger, provide a defense and indemnity for the Driver and Schuck, Pl.'s Mot. for Summ. J., Exs. N, O;

(2) Diamond demanded that Ranger accept defense and coverage obligations for the Driver and Schuck, Pl.'s Am. Compl., Ex. E; and (3) clear, controlling precedent establishes Ranger's duty to defend and indemnify the Driver and Schuck, which Ranger unreasonably ignored. Ranger asserts that Diamond's summary judgment motion as to the bad faith claim should be denied because: (1) there is no controlling precedent that clearly establishes Ranger's duties to the Driver and Schuck, which refutes any showing by Diamond that Ranger lacked a reasonable basis for its actions; and (2) Ranger satisfied its obligations of good faith and fair dealing when it offered to share equally in the defense and indemnification of the Driver and Schuck, offers that Diamond rejected.[4]

▆ The Court concludes that, under the undisputed facts of this case, Diamond is not entitled to judgment on its bad faith claim as a matter of law. Diamond rests its claim on the general argument that Ranger breached its "clear and indisputable obligation to defend and fully indemnify the insureds," Pl.'s Mot. for Summ. J., at 24, because of the exercise of "clear [and] controlling precedent." Pl.'s Am. Compl., at ¶ 18. To the contrary, as the length of this memorandum demonstrates, the entitlement of the Driver, Schuck and Aetna was neither clear nor indisputable. Rather, Ranger's position, while ultimately found to be legally incorrect, was reasonably based on the applicable law and the facts in the case. Therefore, the Court will deny Diamond's motion for summary judgment as to the bad faith claim. Ranger's motion for partial summary judgment on the bad faith claim, which the Court will construe as a motion for summary judgment on the reasonableness of its conduct, will be granted.[5]

---

4. Ranger presents as a defense that it offered to pay half of the defense and indemnification costs for the Driver and Schuck. However, under the circumstances of this case, Ranger was justified in making no offer. Therefore, the fact that Ranger offered to share half the costs is irrelevant.

5. Ranger moved for partial summary judgment on the bad faith claim on the ground that the Letter Agreement barred such a claim

## V. CONCLUSION

Based on the foregoing, Diamond's motion for summary judgment will be granted in part and denied in part. Ranger's cross-motion for summary judgment will be denied. Ranger's motion for partial summary judgment on bad faith claim, which the Court will construe as a motion for summary judgment on the reasonableness of its conduct, will be granted.

The Court concludes that Ranger is responsible for primary coverage and defense to the Driver, Schuck, and Aetna, and that Diamond is responsible for providing excess coverage. Under this holding, Ranger is liable up to its policy limit of $1 million for the settlement of the underlying action, and must reimburse Diamond the $500,000.00 contributed by Diamond to fund the settlement. Ranger must also reimburse Diamond for the defense costs expended by Diamond to defend the Driver and Schuck, which total $108,748.80. Finally, the Court finds that Ranger's conduct in processing the claims of the Driver and Schuck was reasonable and that Ranger is entitled to judgment on Diamond's bad faith claim.

An appropriate Order follows.

### ORDER

**AND NOW,** this **17th** day of **May, 1999,** upon consideration of plaintiff's motion for summary judgment (doc. no. 16), defendant's motion for partial summary judgment on the bad faith claim (doc. no. 17), defendant's cross-motion for summary judgment (doc. no. 19), and the responses thereto, it is hereby **ORDERED** as follows:

1. Plaintiff's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART;**

2. Defendant's cross-motion for summary judgment is **DENIED;** and

3. Defendant's motion for partial summary judgment on the bad faith claim, which the Court will construe as a motion for summary judgment on the reasonableness of defendant's conduct, is **GRANTED.**

It is further **ORDERED** that defendant pay to plaintiff the amount of $500,000.00, the remaining policy limits under defendant's insurance policy.

It is further **ORDERED** that defendant pay to plaintiff the amount of $108,748.80, the defense costs expended by plaintiff.

It is further **ORDERED** that **JUDGMENT** shall be entered in favor of plaintiff in the amount of $608,748.80 and against defendant, and the Clerk shall mark this case **CLOSED.**

### AND IT IS SO ORDERED.

by Diamond, an argument with which the Court disagrees, and not on the issue of the reasonableness of its conduct. However, in its answer to Diamond's motion for summary judgment on the bad faith claim, Ranger put

at issue the reasonableness of its conduct, to which Diamond replied. Therefore, both sides were on notice and had an opportunity to address the issue of the reasonableness of Ranger's conduct in their submissions.